# Commonwealth *ex. rel.* King *versus* King.

1. The right of appointment of the governor, to fill a vacancy in a county office, under the 8th section of the 4th article of the constitution, extends only to the period between the death, resignation or removal of the incumbent and the beginning of the new term by regular succession.

2. The sheriff of McKean county died on the 14th of October 1875, in the last year of his term. To fill the vacancy the relator was appointed by the governor, his commission running to January 1877. The respondent was elected sheriff for the term of three years, at the regular triennial election on November 2d 1875. *Held,* that the appointee of the governor was only entitled to the office from the time appointed until the beginning of the next regular term in January 1876 ; and that the respondent was entitled to the same after that time.

June 25th 1877. Before AGNEW, C. J., SHARSWOOD, MERCUR, GORDON, PAXSON, WOODWARD and STERRETT, JJ.

Error to the Court of Common Pleas of *McKean county :* Of May Term 1877, No. 38.

*Quo warranto ex relatione* Thomas King against Chester S. King, to show by what warrant the latter exercised the office of sheriff of McKean county.

On the 14th day of October 1875, M. N. Powell, sheriff of McKean county, died. It was the last year of his term. On the 25th day of October 1875, Thomas King, the relator, was appointed to fill the vacancy, and commissioned by the governor until the end of the next session of the legislature of the Commonwealth, the state department writing him that upon his confirmation by the senate, a new commission would be issued, running to the 1st of January 1877. At the general election, November 2d 1875, Chester S. King, respondent, was voted for and declared elected, and subsequently commissioned for the full term of three years from January 1st 1876, under which commission he claimed to exercise the duties of the office.

On the 16th of February 1876, relator petitioned for a rule to show cause why a quo warranto should not issue. A rule to show cause was granted returnable March 2d, and on the 3d day of March

a writ was issued returnable March 21st.   On the 18th day of March an answer was filed.

The relator claimed that under the law and constitution he was entitled to hold the office, perform the duties and receive the emoluments until January 1st 1877.

The case was heard before Williams, P. J., April 10th 1876, who entered judgment for the respondent and filed the following opinion, which is given *in extenso*, because of its able and exhaustive discussion of the question involved.

"In October 1872, M. N. Powell was elected sheriff of McKean county, and commissioned for the term of three years.   The time for choosing his successor was the general election of 1875.   The sheriff's proclamation for the election had been duly issued and advertised, designating the offices to be filled at the election ; that of sheriff being one.   Candidates had been nominated by both parties for election to the office of sheriff, and the political canvass nearly closed, when Powell, after an illness of a few hours' duration, died. This was on the 14th day of October, and the election was to occur on the 2d day of November, or within less than three weeks.   The relator was appointed to fill the vacancy, and commissioned by the governor, as sheriff, his commission running according to its terms until the close of the next (the present) session of the legislature.

" The election was proceeded with in accordance with the sheriff's proclamation, and resulted in the election of the respondent to the office of sheriff of McKean county.   He was commissioned by the governor for a full term of three years, in accordance with the terms of the election so held.   The writ of quo warranto was applied for by the relator in order to test the validity of the commission so issued to the respondent.

" In his petition the relator sets out the terms of his own commission, and claims the right to perform the functions of sheriff, by virtue thereof.

" The respondent replies, the election and his commission issued in pursuance thereof, for the term of three years.   To this answer the relator demurs.   The issue, therefore, is one of law simply, and presents the question of the validity of the election of the respondent.   Its validity is denied upon the allegation that there was no vacancy in the office of sheriff to be filled at the general election of 1875, because the death of Powell occurred within three months immediately preceding the election.   This circumstance, it is argued, took from the electors of McKean county the power to elect a sheriff, because of the provisions of the new constitution, and the Act of May 15th 1874.   It becomes necessary therefore to examine somewhat at length the provisions bearing upon this subject.

" Art. 4, sect. 8, of the constitution, confers on the governor the power to nominate, and by and with the advice and consent of two-thirds of the senate, to appoint certain officers whose places are not

[Commonwealth *ex rel.* King *v.* King.]

under any circumstances to be filled by election; and gives him the power to fill vacancies that may happen during a recess of the senate in these offices, and issue commissions to his appointees during such recess, to expire at 'the end of the next session.' The same section then proceeds to confer on the governor the power to fill vacancies in certain elective offices, and provides that if the vacancies occur during the session of the senate, the governor shall nominate to the senate a suitable person to fill the vacancy. It then concludes with these words : 'But in any such case of vacancy in an elective office a person shall be chosen to said office at the next general election, unless the vacancy shall happen within three calendar months immediately preceding said election, in which case the election for said office shall be held at the second succeeding general election.'

" The other constitutional provisions bearing upon the question are sects. 1 and 2 of art. 14. Sect. 1 defines and enumerates the ' county officers,' the office of sheriff being one of them. Sect. 2 provides that ' county officers' shall ' be elected at the general elections, and shall hold their offices for the term of three years, beginning on the first Monday of January next after their election, and until their successors shall be duly qualified. All vacancies not otherwise provided for shall be filled in such manner as may be provided by law.

" From these provisions it seems clear that if the death of M. N. Powell created a vacancy within the meaning of sect. 8 of art. 4, the position of the relator is sustained. Before determining this point it is important to get at the exact sense in which the word is employed in this section ; it should be borne in mind that sects. 1 and 2 of art. 14, fix the terms of county officers, and provide for their election. The whole subject, therefore, of the election and succession of all county officers, being thus distinctly provided for, we may safely conclude that such provisions as relate only to the filling of vacancies were intended to be auxiliary to, and not destructive of the provision of art. 14. With this thought in mind, let us now turn back to sect. 8, art. 4, and look once more at its words : ' But in any such case of vacancy in an elective office, persons shall be chosen to said office at the next general election.'

" Chosen for what ? not for a term to be filled regularly, under art. 14, but to fill an office that would otherwise be vacant, because of the want of authority to elect at that time ; if it was a choosing at the regular time fixed, in order to keep up the line of succession in the office, the case would be already provided for ; but sect. 8 continues the subject by adding, ' unless the vacancy shall happen within three calendar months immediately preceding such election, in which case the election for said office,' that is, to fill the vacancy in said office, ' shall be held at the second succeeding general election.' Why ? Because a vacancy ought not to be filled

[Commonwealth *ex rel.* King *v.* King.]

by an election without time enough in which to select suitable candidates, and give general notice to electors that an officer is to be voted for, not ordinarily elected at that time.    This construction leaves art. 14 to provide for the ordinary succession of official terms; and sect. 8 of art. 4, to provide for the extraordinary elections rendered necessary by the happening of a vacancy requiring to be filled by an election at another than the regularly triennial election.    But, is the Act of 1874 capable of a construction in harmony with this view of the constitutional provisions?    It declares ' that in case of a vacancy happening by death, resignation, removal or otherwise, the governor shall appoint to fill the vacancy, where provision is not already made by the constitution or laws for filling it, and that the person so appointed shall continue in office till the first Monday of January next succeeding the first general election, which shall occur three or more months after the happening of such vacancy.'    The title of this act shows that its purpose is simply ' to provide for the appointment of officers to fill vacancies in cases not otherwise provided for by the constitution or laws of this Commonwealth.'    It was intended to carry out the provisions of sect. 8 of art. 4.    If the view we have taken of that section be correct, then this Act of Assembly must be held to relate only to such cases of vacancy as require to be filled at another time than the regular or usual election for filling the office.    A vacancy occurring at such time as to be filled by the people without any departure from the rule of election fixed by art. 14, is already ' provided for.'    The case unprovided for at the passage of the act was the occurrence of a vacancy requiring to be filled at another than the usual time, of which all electors would have notice.    The provision made for this case by the Act of 1874 is that such vacancy shall be filled at the first election occurring long enough after the vacancy arises to afford opportunity to make an intelligent choice.    This time is fixed at three months.

" Any other view of this act makes it infringe upon art. 14, sect. 2, of the constitution; but the construction we have considered not only relieves the Act of 1874 of this difficulty, but assigns to it its proper place in our elective system.    The people elect their officers for fixed terms and at regular intervals, so that no vacancy can occur without the intervention of some disturbing cause, such as the death, resignation or removal of the officer: when, by reason of such disturbing cause, the vacancy does occur for which the ordinary machinery of the election laws is inadequate to provide, we have the remedy for the exceptional and disturbing case in the provisions relating to the filling of just such vacancies; this makes our system complete and harmonious.

· " But let us look at the consequences that might follow a holding in accordance with the position of the relator.    If the vacancy is not such as we have supposed, but is any vacancy occurring at any

[Commonwealth *ex rel.* King *v.* King.]

time, then the regular operation of the election laws would be interfered with in the case in hand, and an election occurring at the end of the constitutional term of the office, for which candidates had been nominated after their qualifications had been discussed and their friends marshalled, would be postponed for one whole year. If these consequences must follow when the death of the officer occurs three weeks before the election at which his successor should regularly be chosen, they must with equal certainty follow if the death occurs but one week or one day before the time for opening the polls.   If the death of the incumbent works this serious change in the position of candidates and electors, so equally must his 'resignation or removal.'   It might happen, therefore, that the incumbent of a county office, becoming satisfied that his favorite candidate for the succession must be defeated, should resign on the eve of an election, thereby creating a vacancy, which the governor must fill, and so not only postpone the election for one year and secure an opportunity to fight the battle over, but by the appointment of his candidate by the governor to fill the vacancy, secure for him mean time, by this artifice, the very office that it had become apparent the people were not disposed to confer upon him, and when the second succeeding general election comes around, and the issue is again made up with another prospect of defeat, what could prevent the appointee from offering his resignation, and so creating another vacancy to be filled by the governor, and postponing the election for another year ?   Who can tell at what time an election could ever be reached at which the electors might feel sure that they would be permitted to exercise their constitutional right to elect a sheriff ?

" But suppose the election to have been held, the votes actually counted, and the result ascertained to be adverse to the wishes of the incumbent, and he then resigns.   What follows ?   Here is a vacancy in the office of sheriff, and it has happened by resignation ; it is one of the precise cases put by the Act of 1874.   If the relator's construction be correct, how is this vacancy to be filled ?   Very clearly, it must be filled by appointment by the governor.   How long shall the appointee hold ?   The reply of the relator must be, ' Until the first Monday of January next succeeding the first general election which shall occur three or more months after the happening of such vacancy.'   And there can be no escape from it, if his construction be correct.   Such consequences were not intended by the constitution, or by the Act of 1874 ; and they seem to illustrate the necessity of giving such a construction to all their provisions as shall secure to the people the right to elect their officers in accordance with the spirit of our institutions, as the first object of regard ; and then in the next place, and in subordination to this great fundamental right, to provide for filling vacancies occurring within the term, at such times and in such manner that the ordi-

nary operation of our elective system fails to provide for the succession.

"The question is new, and the phraseology of the constitution and of the Act of 1874 is such that the work of harmonizing their provisions is by no means easy, but we have persuaded ourselves that it is not impossible. From the construction we have adopted, we have come to the following conclusions applicable to this case:—

"That the election of 1875 was the usual, regular and proper triennial election for sheriff of McKean county.

"That the death of the outgoing officer, a few days before the election, could not divest the right of the electors to fill the office at that election.

"That the respondent was regularly elected at said election, has been duly commissioned by the governor, and is the legal incumbent of the office of sheriff for said county, for the term of three years from the first Monday of January last.

"Judgment accordingly for respondent, with costs."

The relator took this writ, and assigned for error this entry of judgment for respondent.

*R. Brown, B. B. Strang, Junius R. Clark* and *Williams & King*, for relator.—The constitution of 1873 made provision for election to county offices, but none for appointment to fill a vacancy in the office until an election could be held. The legislature, to remedy this omission, passed the Act of May 15th 1874, and it was under the powers conferred by this act that the relator was appointed and commissioned on the 25th of October 1875 to fill the office, made vacant by the death of M. N. Powell on the 14th of October 1875.

Why, if the Act of 1874 is constitutional, is not the relator entitled to hold the office for the term as provided by the said Act, viz.: until the first Monday of January next succeeding the first general election which shall occur three or more months after the happening of the vacancy? In this act we find nothing in conflict or inconsistent with any of the provisions of the constitution; the clause of this act specifying the length of the term for which the appointee shall be entitled to the office, is only in furtherance of art. 4, sect. 8, of the constitution, which provides, that in case the "vacancy shall happen within three calendar months preceding the general election, the election for said office shall be held at the second succeeding general election;" and of art. 14, sect. 2, which provides, "that the term of the person elected shall begin on the first Monday of January next after his election." The Act of 1874 thus provides that the person appointed to the office shall hold the same until the term of the person duly elected shall begin.

The relator was appointed, not for the balance of the unexpired term of the deceased incumbent, but under the act of 1874 "to fill

[Commonwealth *ex rel.* King *v.* King.]

the office;" and we submit that he is entitled to the office for the term specified by said act, which in this case would be until the first Monday of January 1877.

The respondent was elected to the office expected to become vacant on the first Monday of January 1876, by the expiration of the term for which Powell was commissioned. If Powell had lived, his election would have been regular to fill such vacancy; but by Powell's death, his term of office had already, on the 14th of October 1875, in fact expired with him; to fill this vacancy that had occurred the relator was appointed, and his right to the office and the term for which he was entitled to it was determined by Act of Assembly and the constitution. Hence, at the time of the election of the defendant, there was no vacancy in the office either in fact or in immediate expectancy. Therefore, the defendant was elected to the office to supply a vacancy that did not exist and could not occur, and to say that he was elected to fill the vacancy that had occurred by the death of Powell, we submit that such vacancy had already been supplied by the appointment of the relator, and further, that an election to fill that vacancy could not under the constitution and law be held until the general election of 1876.

*A. G. Olmstead* and *John G. Hall*, for respondent.—It is not to be presumed that the legislature were ignorant of the right of the people to elect their officers, nor of the constitutional provisions guarding that right. It *is* to be presumed that they intended this Act of Assembly to be in harmony with that right and with these provisions. Therefore, if such a harmonious construction can be given to it, that construction should be applied. What then was the legislative intent?

The mischief to be remedied at its passage was the happening of vacancies at times when no election was provided for by the constitution or laws. The remedy needed was a provision for keeping up the succession in county officers by appointment, and, after suitable notice to the people, by election. It is presumed that the Act of 1874 was intended to provide a remedy for the actual mischief, and to give effect to, not defeat, the constitutional right of the people to elect their officers.

In the cases to which the court below held it applicable, it does both these things. In a case like the one now before the court, if applicable, it does neither. On the contrary, it limits the right of the people to choose their officers. For here was an election held, after due and full notice, at the time fixed by the constitution for the election of a successor to the incumbent, whose term was just expiring. The case was not within the mischief to be remedied, and it is almost impossible that it could have been within the legislative intent.

[Commonwealth *ex rel.* King *v.* King.]

Chief Justice AGNEW delivered the opinion of the court, October 1st 1877.

The opinion of the learned judge of the Common Pleas contains a very full and satisfactory discussion of the question in this case. The true inquiry is whether under the constitution and laws of the state the governor, in filling a vacancy caused by death, can commission a sheriff for a term to last beyond the expiration of the term of the deceased officer. The argument of the relator fails to distinguish between the major power of the people to elect sheriffs, by way of regular succession, for fixed terms; and the minor power of the governor to fill a vacancy in an existing term. The second section of the 14th article of the new constitution declares that, " county officers shall be elected at the general elections, and shall hold their offices for the term of three years, beginning on the first Monday of January next after their election, and until their successors shall be duly qualified; all vacancies, not otherwise provided for, shall be filled in such manner as may be provided by law." As the term is fixed by the constitution to begin on the first Monday of January following the election, it is the clear constitutional right of the people to elect the successor of the incumbent of an existing term at the general election next preceding the expiration of his term; and if the successor does not qualify no vacancy takes place, but the existing term is extended until the successor is duly qualified. It is manifest, therefore, that the vacancy referred to in this section is one occurring in an existing term by death, removal, resignation or other cause, which prevents the existing term being carried to its regular period of expiration. The appoinment to fill this vacancy, or intermediate period between the death and the period of the expiration, necessarily follows the nature of the vacancy. The constitution itself provides for the election of the sheriff in regular succession, and leaves no vacancy to be provided for as to him. When the successor is duly elected his term is fixed to begin on the first Monday of January following. It is clear, therefore, that the vacancy referred to in the section cannot refer to any portion of the new term which accrues under the constitution itself by regular election and by way of constitutional succession. It follows from this major requirement of the constitution, that the term vacancy used in the 8th section of the 4th article, conferring power on the governor to fill vacancies, must have the same interpretation, so far as it relates to the office of sheriff, or other county elective offices under the 2d section of the 14th article, otherwise the two provisions would conflict. Such a conflict is unnecessary; for the general election referred to in the last clause of the 8th section of the 4th article can have no appropriate meaning without trenching upon the provisions of the 2d section of the 14th article. It says: " but in any such case of vacancy in an elective office, a person shall be chosen to

[Commonwealth *ex rel.* King *v.* King.]

said office at the next general election, unless the vacancy shall happen within three calendar months immediately preceding such election, in which case the election for said office shall be held at the second succeeding general election." The true purpose of this provision is to preserve the popular right, and not to limit or destroy it. Without the provision for election, the appointment to fill the vacancy would run to the end of the term made vacant by death or other cause; but with it, the right of the people to elect their officers takes effect at the next, or at the furthest, at the second succeeding general election. For example, if the sheriff die in the first year of his term and three months before the day of the general election, his successor will be chosen in the same year, or two years before the time fixed for the election of a successor in due and regular course of the constitutional arrangement of election to the office. If the incumbent die within three months of the election, then an election will take place one year in advance of the regular period. This is evidently the purpose of this part of the 8th section of the 4th article, and no conflict can arise between it and the 2d section of the 14th article. The true interpretation of the constitution being this, it is manifest that the Act of May 15th 1874 cannot change the constitutional provisions and extend a vacancy into the next regular term of office, and thereby defeat the popular right of election to fill the next regular term. That act, therefore, must have the same interpretation, and the right of appointment of the governor to fill a vacancy extends only to the period between the death of the incumbent and the beginning of the new term by regular succession, under the provisions of the 2d section of the 14th article of the new constitution.

Judgment affirmed.