## Buckley, Appellant, *v.* Holmes et al.

*Elections—Judges—Orphans' Court judges—Constitutional law —Constitution of Pennsylvania, Art. V, Sec. 25; Art. VIII, Sec. 2—Constitutional Amendments of 1909, P. L. 948—Time of election.*

1. An Orphans' Court judge is not a judge of a designated judicial district of a state, but of the court of the county in which he resides. If there be one of two, three or four counties, constituting a single judicial district, such judge is not a judge of that district with jurisdiction extending all over it, as in the case of each of the Common Pleas judges within it. His jurisdiction is limited to the county in which his court exists.

2. The intent of the sixth constitutional amendment of 1909, (P. L. 948), was to eliminate the spring election and to continue the constitutional provisions for the election of local or municipal officers on a day different from that on which general State officers are elected; judges of the several judicial districts are State officers but the duties which they perform are local and under the sixth amendment of 1909 they are in the class of officers to be elected at the municipal elections.

3. It is the intent of such amendment that Orphans' Court

judges of the State are to be elected at the same time that elections are held for judges of the courts for the several judicial districts and for county, city, ward, borough and township officers for regular terms of service, and it is not material that they are not judges of the courts for the several judicial districts or that there are no provisions in the Constitution, other than the sixth amendment of 1909 (P. L. 948), under which they can be elected.

4. Under Section 25 of Article V, and Section 8 of Article IV of the Constitution, where a vacancy happens by reason of death in a court of record within three months prior to the next election for judges, the vacancy is to be filled by appointment by the governor until the first Monday of January next succeeding the second election for judges after the occurrence of such vacancy, and this provision has not been made inoperative by the sixth amendment of 1909, amending Section 8 of Article IV, and providing that in the case of a vacancy in an elective office, the person appointed by the governor to fill it shall be succeeded by someone chosen on the next election day appropriate for such office, unless the vacancy shall happen within two calendar months immediately preceding such election, in which case the election for said office shall be held on the second succeeding election day appropriate for such office.

5. A judge of the Orphans' Court died within three months and more than two months prior to the next election for judges. Nomination petitions were prepared nominating certain persons as candidates for the vacancy caused by the death of such judge. In a suit in equity brought by a taxpayer to enjoin the county commissioners from printing the names of the nominees mentioned in such petition upon the ballots, the lower court dismissed the bill. *Held,* that the vacancy caused by the death of such judge could not be filled at the next election for judges, but must be filled by the governor, the incumbent holding office until the first Monday of January following the second election for judges held after the occurrence of such vacancy, and the decree was reversed with directions to grant the relief prayed for.

Argued Sept. 24, 1917. Appeal, No. 274, Jan. T., 1917, by plaintiff, from decree of C. P. No. 1, Philadelphia Co., June T., 1917, No. 5686, dismissing bill in equity for an injunction, in case of F. Pierce Buckley v. George F. Holmes, Robert J. Moore and Harry Kuenzel, City Commissioners for the County of Philadelphia. Before

BROWN, C. J., MESTREZAT, POTTER, STEWART, MOSCH-ZISKER, FRAZER and WALLING, JJ.  Reversed.

Bill in equity for an injunction.  Before PATTER-SON, J.

From the record it appeared that F. Pierce Buckley filed, in the court below, the following bill against George F. Holmes, Robert J. Moore and Harry Kuenzel, City Commissioners for the County of Philadelphia:

"To the Honorable the Judges of said Court:

"Your orator complains and says:

"First.—I am a citizen of the United States and of this Commonwealth, a resident of the City and County of Philadelphia, and an owner of real and personal property in said city and county upon which I am required to and annually do pay taxes to said city and county and also to said Commonwealth, which said taxes will be wrongfully increased and I will be compelled to pay such wrongful increase if the defendants make the expenditures hereinafter specified.

"Second.—The defendants are the city commissioners of the County of Philadelphia, charged by law with the duty of preparing, printing and distributing the sample and official ballots to be voted by the electors of said city and county at every election, including those to be used at the municipal election to be held on the sixth day of November of this year.

"Third.—On November 2, 1915, Hon. Morris Dallett was elected a judge of the Orphans' Court for the County of Philadelphia, one of the courts of record of this Commonwealth, to serve for the term of ten years from the first Monday of January, 1916, was duly commissioned for said term, duly qualified himself for and entered upon the performance of the duties of said office, and continued therein until his death on August 23, 1917.

"Fourth.—By reason of his death more than two months, but less than three months prior to the election

to be held on November 6, 1917, a grave and important public question has arisen, viz, is the vacancy thus occasioned to be filled by the electors at said election? Unless said question is judicially determined prior to the time for printing the ballots for said election great and unnecessary expense will be incurred, and because of the fact that two other vacancies will exist and have to be filled thereat owing to the expiration of the terms of office of Hon. JOSEPH F. LAMORELLE and Hon. EDWARD A. ANDERSON, two other of the judges of said court, unless said question is decided prior to the holding of said election great confusion and uncertainty will result owing to the fact that the electors will not know how many judges are to be elected to said court at said election, many ballots may be rejected and not counted because in fact three are voted for by the electors, and many electors may lose a portion of their right of suffrage by voting for but two judges when three are to be elected.

"Fifth.—By Article V, Section 25, of the Constitution of this Commonwealth, it is provided as follows:

" 'Any vacancy happening by death, resignation or otherwise, in any court of record, shall be filled by appointment of the governor, to continue until the first Monday of January next succeeding the first general election which shall occur three or more months after the happening of said vacancy.'

"At the time of the adoption of the Constitution, it was provided by Article VIII, Section 2, that

" 'The general election shall be held annually on the Tuesday next following the first Monday of November'......

"That provision, however, was amended by amendment five of the amendments of 1909 (P. L. 948) so as to read as follows:

" 'The general election shall be held biennially on the Tuesday next following the first Monday of November in each even-numbered year'......

"The provision last quoted when applied to Article V,

Section 25, above quoted, would require the vacancy caused by the death of Judge DALLETT to be filled by the electors at the election to be held on November 5, 1918; but by amendment six of the amendments to the Constitution of 1909 (P. L. 948) adopted at the same time as the amendment last above quoted, Article VIII, Section 3, of the Constitution is amended to read as follows:

"'All judges elected by the electors of the State at large may be elected at either a general or municipal election, as circumstances may require. All elections for judges of the courts for the several judicial districts, and for county, city, ward, borough and township officers, for regular terms of service, shall be held on the municipal election day; namely, the Tuesday next following the first Monday of November in each odd-numbered year, but the general assembly may by law fix a different day, two-thirds of all the members of each house consenting thereto; provided, that such election shall always be held in an odd-numbered year.'

"Nowhere is it defined by any of the amendments of 1909, what courts are 'courts for the several judicial districts,' but by Sections 4 and 5 of Article V, of the Constitution as originally adopted, and Sections 13 and 14 of the Schedule thereto, the only courts which were courts for 'judicial districts' were the several Courts of Common Pleas of the Commonwealth, and the only 'judges of the courts for the several judicial districts,' were judges of the said Courts of Common Pleas. Said judges of the said Courts of Common Pleas became virtute officii judges of the Orphans' Court of the particular counties of their districts by Article V, Section 9, of the Constitution, until a county had a population exceeding 150,000, or until, notwithstanding a lesser population existed, the general assembly decided that it needed a separate Orphans' Court, when by Article V, Section 22, a separate Orphans' Court was created for that county. By virtue of said provision all Orphans' Courts became and were Orphans' Courts for particular

counties, and never for any judicial district; and (with the single exception of certain language appearing in the Act of June 7, 1917), such has been the continuous and uninterrupted title given to said Orphans' Courts and the judges thereof by the legislative and executive departments of the State government in all their official actions ever since the adoption of the present Constitution of this Commonwealth. I therefore aver that amendment six of the amendments of 1909, above quoted, does not apply to the vacancy caused by the death of Judge DALLETT, but that the vacancy is to be filled by the electors of this county at the election to be held November 5, 1918.

"Sixth.—By amendment one of the amendments of the Constitution of 1909 (P. L. 948) it is provided as follows:

" 'He (the Governor), shall nominate and, by and with the advice and consent of two-thirds of all the members of the Senate, appoint a Secretary of the Commonwealth and an Attorney General during pleasure, a superintendent of public instruction for four years, and such other officers of the Commonwealth as he is or may be authorized by the Constitution or by law to appoint; he shall have power to fill all vacancies that may happen, in offices to which he may appoint, during the recess of the senate, by granting commissions which shall expire at the end of their next session; he shall have power to fill any vacancy that may happen, during the recess of the Senate, in the office of auditor general, State treasurer, secretary of internal affairs or superintendent of public instruction, in a judicial office, or in any other elective office which he is or may be authorized to fill; if the vacancy shall happen during the session of the Senate, the Governor shall nominate to the Senate, before their final adjournment, a proper person to fill said vacancy; but in any such case of vacancy, in an elective office, a person shall be chosen to said office on the next election day appropriate to such office accord-

ing to the provisions of this Constitution, unless the vacancy shall happen within two calendar months immediately preceding such election day, in which case the election for said office shall be held on the second succeeding election day appropriate to such office. In acting on executive nominations the Senate shall sit with open doors, and, in confirming or rejecting the nominations of the Governor, the vote shall be taken by yeas and nays and shall be entered on the journal.'

"By Article V, Section 25, of the Constitution, which Section never has been amended, it is provided as follows:

" 'Any vacancy happening by death, resignation or otherwise, in any court of record, shall be filled by appointment of the Governor, to continue until the first Monday of January next succeeding the first general election which shall occur three or more months after the happening of said vacancy.'

"I aver that there are other judicial offices than judges of courts of record, and that under said provisions vacancies in courts of record cannot be filled at the next election appropriate to the election of such judges, unless that vacancy occurred more than three months prior to said election, and that vacancies in judicial offices other than courts of record can be filled at the next election appropriate to the election of such officers if the vacancy occurred not less than two months prior to said election. And I further aver that as Judge DALLETT was a judge of a court of record, and as his death did not occur three or more months before the election to be held November 6, 1917, the vacancy caused thereby cannot be filled at said election, no matter what construction be given to the constitutional provisions set forth in the fifth paragraph of this bill.

"Seventh.—By Section 5 of the Act of July 24, 1913, P. L. 1001, as amended by the Act of May 18, 1917, P. L. 135, it is provided that nomination petitions for judges of courts of record shall be filed 'at least forty days prior

to the primary,' which primary is to be held this year on the 19th day of September. The death of Judge DAL-LETT as above stated, occurred less than 'forty days prior to the primary.' By Section 15 of the said Act of 1913, it is provided that where vacancies are to be filled at the election immediately following a primary, and it is too late to file nominating petitions for that primary, that nominating petitions may be filed, and the names of the candidates specified therein shall be printed on the official ballot for the general election then next ensuing, without those persons being nominated at any primary election.

"Eighth.—A large number of persons, claiming that the vacancy caused by the death of Judge DALLETT is to be filled at the election to be held on November 6, 1917, have applied for and obtained nominating petitions and intend to have them duly signed, certified and filed for the purpose of having the names of the nominees specified therein placed upon the official ballot for said election; and the defendants averring that the questions raised are judicial questions which ought not to be decided by them, have announced their determination to print all said names upon the official ballot for said election, unless restrained from so doing by a decree of court. The effect of printing said names upon the official ballot will be to largely increase the size thereof, to largely increase the difficulty of properly marking the ballot; and to largely add to the expense of said printing, which increased expense will have to be borne by your orator and the other taxable citizens and inhabitants of this county and State.

"Wherefore needing equitable relief your orator prays:

"1. That the defendants and each of them be perpetually enjoined and restrained from printing upon the official ballot for the election to be held November 6, 1917, any name or names whatsoever of persons nominated for the office of judges of the Orphans' Court of Philadel-

phia County, other than those nominated at the primary to be held September 19, 1917, to fill the vacancies caused by the expiration of the term of office of the Hon. JOSEPH F. LAMORELLE and Hon. EDWARD A. ANDERSON.

"2. That it be decreed at what election the vacancy in said Orphans' Court, caused by the death of the Hon. MORRIS DALLETT, shall be filled.

"3. That such other relief be granted your orator as the facts shall warrant."

An answer to the bill was filed concurrently with the bill, and, on the same day, the bill was dismissed without any opinion by the court setting forth the reasons for its action. Plaintiff appealed.

*Error assigned* was the decree of the court.

*William A. Hayes,* for appellant.

*Alex. Simpson, Jr.,* for appellees.

OPINION BY MR. CHIEF JUSTICE BROWN, October 15, 1917:

By the Act of May 19, 1874, P. L. 206, the Orphans' Courts of the State are made courts of record. Under Section 25 of Article V of the Constitution, "any vacancy happening by death, resignation or otherwise, in any court of record, shall be filled by appointment by the Governor, to continue till the first Monday of January next succeeding the first general election, which shall occur three or more months after the happening of such vacancy." This provision remains unchanged, and, but for certain amendments to others in the Constitution, it could not be questioned that the successor of Judge DALLETT—who died August 23, 1917,—would be an appointee of the Governor, to serve until the first Monday of January after the general election in 1918, when a successor would be elected by the electors of the county.

Section 2, Article VIII, of the Constitution, as origi-

nally adopted, provided that the general election should be held annually on the Tuesday following the first Monday of November, and section three of the same article directed that all elections for city, ward, borough and township officers, for regular terms of service, should take place on the third Tuesday of February. These two provisions have been changed by the fifth and sixth amendments of 1909, and now read as follows: "Section 2. The general election shall be held biennially on the Tuesday next following the first Monday of November in each even-numbered year, but the General Assembly may by law fix a different day, two-thirds of all the members of each house consenting thereto: Provided, That such election shall always be held in an even-numbered year." "Section 3. All judges elected by the electors of the State at large may be elected at either a general or municipal election, as circumstances may require. All elections for judges of the courts for the several judicial districts, and for county, city, ward, borough, and township officers, for regular terms of service, shall be held on the municipal election day; namely, the Tuesday next following the first Monday of November in each odd-numbered year, but the General Assembly may by law fix a different day, two-thirds of all the members of each house consenting thereto: Provided, That such election shall always be held in an odd-numbered year."

The February election has been abolished, and there is now but one election each year, held on the Tuesday following the first Monday of November. The general election is biennial in each even-numbered year; the municipal, on the same day in odd-numbered years. The first question to be considered is, at which of these elections are Orphans' Court judges elected?

By the amendments of 1909 it was intended to get rid of the spring election and to continue the constitutional provision for the election of local or municipal officers on a day different from that on which general State officers are elected. While judges of the several judicial

districts are State officers, they are compelled to reside in the districts for which they are elected, and the duties which they regularly perform are local. It was doubtless for this reason that they were included, under the sixth amendment of 1909, in the class of officers to be elected at municipal elections. If this be true of Common Pleas judges, it is certainly no less true of an Orphans' Court judge, whose jurisdiction is peculiarly local. Every act of assembly creating a separate Orphans' Court speaks of it as the court of the county in which it is established, and the same is true of the acts creating additional Orphans' Court judges in the Counties of Allegheny and Philadelphia. Vide Acts of June 13, 1883, P. L. 97; March 28, 1895, P. L. 31; April 11, 1901, P. L. 71; May 2, 1901, P. L. 117; July 11, 1901, P. L. 655; July 11, 1901, P. L. 657; May 25, 1907, P. L. 260; May 5, 1881, P. L. 12; April 28, 1887, P. L. 72; March 22, 1907, P. L. 26. An Orphans' Court judge is not a judge of a designated judicial district of the State, but of a court of the county in which he resides. If it be one of two, three or four, constituting a single judicial district, he is not a judge of that district, with jurisdiction extending all over it, as does that of each of the Common Pleas judges within it. His jurisdiction is limited to the county in which his court exists. This being true, he is not a judge within the strict meaning of the words, "judges of the courts for the several judicial districts" appearing in the sixth amendment of 1909; but it does violence to that amendment to hold that it was not intended thereby to include Orphans' Court judges, as well as Common Pleas judges, in the class of officers to be elected at municipal elections in odd-numbered years. Keeping in mind the manifest intention of the sixth amendment, to which we have alluded, it seems to be quite clear that the Orphans' Court judges of the State are to be elected at the same time that elections are held "for judges of the courts for the several judicial districts, and for county, city, ward,

borough and township officers, for regular terms of service." Unless this be so, Orphans' Court judges are in the anomalous situation of having no time fixed for their election. They are made elective by the Constitution, but, as amended, it will be searched in vain to find any other provision than amendment six of 1909 under which they can be elected.

The second question for determination is, Shall Judge DALLETT'S successor be elected this year or in 1919? As already observed, Section 25 of Article V of the Constitution has never been changed. It remains just as it was originally adopted. It is a section of "The Judiciary" article, and specifically provides that any vacancy happening by death in any court of record shall be filled by appointment by the Governor, "to continue till the first Monday of January next succeeding the first general election, which shall occur three or more months after the happening of such vacancy." This means that if the vacancy happens within three months preceding the next election at which judges are elected, the appointee shall hold his office until the first Monday of January following the second election for judges held after the death which caused the vacancy. By Section 8, Article IV, of the Constitution, known as "The Executive" article, it is provided that the Governor shall fill, by appointment, vacancies in certain offices, including "a judicial office"; and a further provision is that "in any such case of vacancy, in an elective office, a person shall be chosen to said office at the next general election, unless the vacancy shall happen within three calendar months immediately preceding such election, in which case the election for said office shall be held at the second succeeding general election." This provision was entirely consistent with Section 25 of Article V. Has that section been made inoperative by the amendment of 1909, amending Section 8 of Article IV? That section, as amended, declares that, in case of vacancy in an elective office, the person appointed by the Governor

to fill it shall be succeeded by some one chosen on the next election day appropriate to such office, unless the vacancy shall happen within two calendar months immediately preceding such election, in which case the election for said office shall be held on the second succeeding election day appropriate to such office. Judge DALLETT died within three calendar months of the election to be held for judges this year, but more than two calendar months prior thereto. He was a judge of a court of record, and specific provision is made in Section 25 of Article V of the Constitution for the filling of that vacancy by appointment by the Governor of a person who shall hold office until the first Monday of January following the next election after this year for judges other than those elected by the electors of the State at large. That year will be 1919. True, section eight provides for appointment by the Governor to fill vacancies "In a judicial office." "A judicial office," however, is a general term and includes courts of record and courts not of record. The specific provision in the judiciary article of the Constitution for filling vacancies in courts of record has, as already stated, not been changed by amendment, and even if there were an irreconcilable conflict between it and the general provision of Section 8 of Article IV, as amended, a cardinal rule of construction applicable to constitutions as well as statutes, requires that the specific provision shall prevail: 6 Amer. & Eng. Ency. of Law (2d Ed.), 927. " 'Where there are in an act specific provisions relating to a particular subject, they must govern in respect of that subject, as against general provisions in other parts of the statute, although the latter standing alone would be broad enough to include the subject to which the particular provisions relate. Hence, if there are two acts, of which one is special and particular, and clearly includes the matter in controversy, whilst the other is general, and would, if standing alone, include it also, and if, reading the general provision side by side with the particular

one, the inclusion of that matter in the former would produce a conflict between it and the special provision, it must be taken that the latter was designed as an exception to the general provision': Endlich on the Interpretation of Statutes, Section 216; Felt v. Felt, 19 Wis. 193; State v. Goetze, 22 Wis. 363; Crane v. Reeder, 22 Mich. 322. 'Where a general intention is expressed, and the act also expresses a particular intention incompatible with the general intention, the particular intention is to be considered in the nature of an exception': Dwarris on Statutes": Thomas v. Hinkle, 126 Pa. 478.

The amendment of Section 8, Article IV, of the Constitution, does not purport to be a new provision. It recites the original section, and the meaning now to be given to the words, "in a judicial office," is the same as if the section had not been amended. This is conceded by learned counsel for appellees, who also frankly admits that "It necessarily follows that when Article IV, Section 8, was amended, and the words in a judicial office remained unchanged, they cannot be given such an enlarged meaning as to render Article V, Section 25, wholly nugatory; and hence now, as before the amendment, Article V, Section 25, governs and the vacancy caused by the death of Judge DALLETT is not to be filled at the present time."

And now, October 15, 1917, the decree of the court below is reversed, the bill is reinstated, and it is ordered, adjudged and decreed that the defendants, and each of them, be perpetually enjoined and restrained from printing upon the official ballot for the election to be held November 6, 1917, any name or names whatsoever of persons nominated for the office of judge of the Orphans' Court of Philadelphia County, other than those nominated at the primary held September 19, 1917, to fill the vacancies caused by the expiration of the terms of office of the Honorable JOSEPH F. LAMORELLE and Honorable EDWARD A. ANDERSON, the costs below and on this appeal to be paid by the County of Philadelphia.