Eagen, Appellant, *v.* Smith.

Argued January 5, 1951. Before Drew, C. J., Stern, Stearne and Jones, JJ.

*J. Julius Levy,* with him *Earl V. Compton,* for appellant.

*Harry F. Stambaugh,* Special Counsel, with him *Charles J. Margiotti,* Attorney General, and *Samuel M. Jackson,* Deputy Attorney General, for appellee.

*Thomas Raeburn White* and *Maurice Stern,* for the Honorable GROVER C. LADNER, intervener.

OPINION BY MR. CHIEF JUSTICE DREW, February 26, 1951:

The Honorable Michael J. Eagen, appellant, contends that he was lawfully elected a justice of the Supreme Court of Pennsylvania at the general election held November 7, 1950, and brought this proceeding in mandamus to compel the Secretary of the Commonwealth, the Honorable GENE D. SMITH, to so certify. The Court of Common Pleas of Dauphin County refused to issue the writ and this appeal was then filed.

The question before us arises because of the untimely deaths of three members of this Court in the first half of 1950—Mr. Justice PATTERSON on January 6, Mr. Chief Justice MAXEY on March 20, and Mr. Justice LINN on June 13. These vacancies occurred more than three months before the November 7th election, but only the first of them preceded the primary election held May 16, by more than ten weeks. The significance of these facts will become apparent hereafter.

Appellant contends that under Art. V, §25[1] of the Constitution of this Commonwealth all vacancies occurring more than three months prior to the next general election must be filled at that election. He further argues that Art. V, §16[2] prescribes the voting method

---

[1] "Any vacancy happening by death, resignation or otherwise, in any court of record, shall be filled by appointment by the Governor, to continue till the first Monday of January next succeeding the first general election, which shall occur three or more months after the happening of such vacancy."

[2] "Whenever two judges of the Supreme Court are to be chosen for the same term of service each voter shall vote for one only, and when three are to be chosen he shall vote for no more than two; candidates highest in vote shall be declared elected."

for filling vacancies in this Court where more than one exist and that as to two of the vacancies here in question that section was satisfied. Appellant concludes from these contentions that since he received the second highest number of votes at the November 7 election, he should be declared elected to this Court to fill the vacancy caused by the death of Mr. Chief Justice MAXEY.

This position of appellant is necessarily based on the premise that Art. V, §25 and Art. V, §16 of the Pennsylvania Constitution are self-executing. A careful reading of these sections unquestionably shows that the former merely authorizes the filling of the vacancies by the Governor for a specific period of time, and the latter only sets forth the number of candidates for whom each voter will vote where more than one vacancy exists. Neither section supplies a procedure for conducting an election, i.e. the manner in which candidates should be chosen or how the electorate should be notified of the offices to be filled. It is quite clear, therefore, that legislation is required to render the provisions of the Constitution relied upon by appellant effective. This contention of appellant must fail, since constitutional provisions as to elections, such as here under consideration, which show by express terms or necessary implication the necessity for action by the legislature in order to become effective, are not self-executing: 16 C. J. S. Constitutional Law §53; Cooley's Constitutional Limitations (8th Ed.), Vol. 1, p. 165. See *O'Neill v. White*, 343 Pa. 96, 100, 22 A. 2d 25, where a provision, similar to that set forth in Art. V, §25, was held not to be self-executing.

Furthermore, appellant's own argument demonstrates the fallacy of this position. He states that two vacancies were filled at the November 7th election, because, under Art. V, §16, the voting procedure is the

same where there are two vacancies as it is where there is only one, in that each voter votes for but one candidate in both instances. However, he concedes that the third vacancy was not filled because no machinery was set up to elect a third justice. Under this reasoning, the Constitution would be self-executing as to two vacancies but not as to three. Such argument is absurd, for it is obvious that if the Constitution is not self-executing as to all vacancies in this Court, it cannot be self-executing as to any one of them.

Appellant further insists that even if the Constitution is not self-executing, the Pennsylvania Election Code[3] executed it and all of the essential provisions of the Code for electing two justices were followed. This argument is also without merit, for on March 7, 1950, the tenth Tuesday preceding the primaries, a single vacancy existed as a result of the death of Mr. Justice PATTERSON, and that vacancy was the only one that the Secretary of the Commonwealth could certify to the county boards in compliance with Section 905[4] of the Pennsylvania Election Code. Appellant urges, however, that Section 905 is non-essential to the functioning of the electoral machinery and the fact that the second vacancy caused by the death of Mr. Chief Justice MAXEY occurred after March 7, 1950, did not prevent that office from being contested both at the primary and the general election. A similar contention was first made in *Commonwealth v. Blankenburg*, 218 Pa. 339, 67 A. 645, where this Court held that a like provision in the Act of February 17, 1906, P. L. 36, was mandatory and could not be varied because of later occurring vacan-

---

[3] Act of June 3, 1937, P. L. 1333, as amended.

[4] Section 905 provides: "On or before the tenth Tuesday preceding each primary, the Secretary of the Commonwealth shall send to the county board of each county a written notice designating all the offices for which candidates are to be nominated . . ."

cies. There we said (p. 341) : ". . . the things to be done are a series of prescribed steps for a prescribed purpose. The terminus ad quem whereto they all lead is the spring primary whose date is fixed and immovable. *The initiatory step of the series is the notice by the secretary of the commonwealth to the county commissioners, and the next is the publication. For these the statute fixes in positive terms the exact time . . .*" (Italics added). Thus, the requirements of Section 905 are an integral part of the election machinery and may not be ignored.

Furthermore, under Section 906 of the Election Code it is necessary for the county boards to publish in the newspapers not more than nine weeks nor less than eight weeks before the primary the names of all offices for which nominations are to be made. Under that section, publication for the 1950 elections took place during the week of March 14 to 21. The second vacancy on this Court did not arise until March 20, 1950. It would have been a physical impossibility for the Secretary of the Commonwealth in the ensuing twenty-four hours to notify every county board and they in turn to notify the newspapers to correct the advertisement to show two vacancies existed in this Court. Newspapers in a number of counties are published only once a week, and therefore, many could not have printed a correction until after March 21. Thus under appellant's argument Section 906 would also have to be deemed unessential to the election machinery. Such a decision on that point would likewise be contrary to our holding in *Commonwealth v. Blankenburg*, supra.

The notice provisions of Sections 905 and 906 cannot in any event be considered merely directory. They must be followed specifically so that potential candidates may file their nomination papers and so that the electorate may be fully informed as to the offices to

be filled. It is no answer to say that the Constitution itself provides notice. As we have said, the Constitution in respect to elections is not self-executing. The public, therefore, must rely on the election officials to give them notice as prescribed by the Pennsylvania Election Code.

As the learned court below so well stated in its comprehensive opinion: "The candidates and the voters are entitled to know whether one or two vacancies are to be filled. The certification by the Secretary of the offices to be filled and the advertisement by the election boards represents the machinery which the Legislature has established to advise the public what offices are to be filled. For the voters to be advised by official certification and advertisements that they were to fill one vacancy on the Supreme Court and then learn after the election was over that they had filled two vacancies would be looked upon by the citizens as a form of deception practiced upon them by their officials. Were we to grant the writ of mandamus in this case we would be holding that the voters did what they did not know they were doing, and what they were officially told they were not doing."

The mere fact that each voter would have voted for only one candidate whether one or two vacancies existed is certainly no reason to ignore the express mandate of the statute. As the lower court stated the psychology of both the voters and the candidates is entirely different where one vacancy is to be filled and where two are to be filled. Courts cannot deprive the electorate of its right to have full knowledge of the offices to be filled and for whom it is voting.

For these reasons, appellant's petition was properly refused.

Order affirmed.

CONCURRING OPINION BY MR. JUSTICE JONES:

I concur in the affirmance of the judgment entered by the learned court below but am unable to subscribe to the reasons given by the majority for this court's action. The constitutional question involved is of such transcendent importance, touching, as it does, the matter of *due* election to vacancies in judicial office, that I am constrained to give my differing views even if for no other service than the record.

Material to the present question is the fact that three vacancies occurred in the membership of this court in 1950, the last on June 10th, considerably more than three months before the next succeeding general election which fell on November 7, 1950.

Article V, Section 25, of our State Constitution provides that "Any vacancy happening by death, resignation or otherwise, in any court of record, shall be filled by appointment by the Governor, to continue till the first Monday of January next succeeding the first general election, which shall occur three or more months after the happening of such vacancy."

Article IV, Section 8, which empowers the Governor to fill by appointment any vacancy that may happen in a judicial office, inter alia, expressly provides that "... in any such case of vacancy ... *a person shall be chosen to said office on the next election day appropriate to such office according to the provisions of this Constitution,* unless the vacancy shall happen within [three][1] calendar months immediately preceding such election day, in which case the election for said

---

[1] The limitation against election to vacancies in elective offices at the succeeding election is *two* calendar months in Article IV, Section 8, supra, but, in the case of a judicial vacancy, the period has been held to be *three* months by virtue of the controlling Judiciary Article V, Section 25: see *Buckley v. Holmes,* 259 Pa. 176, 187-188, 102 A. 497.

office shall be held on the second succeeding election day *appropriate* to such office" (Emphasis supplied).

And, Article VIII, Section 3, provides that "All judges elected by the electors of the State at large may be elected at either a general or municipal election, as circumstances may require." So that, an election in any year is an appropriate election for choosing judges of our appellate courts.[2]

Article V, Section 25, has never been changed since it was originally adopted in 1873 as a part of our present Constitution. It had its genesis and substance in the 1850 amendment[3] to the Constitution of 1838 *and* the Act of Assembly of April 27, 1852, P. L. 465, "in respect to vacancies in judicial offices" which implemented the constitutional amendment by providing "that the qualified electors shall choose a successor *'at the first general election which shall happen more than three calendar months after the vacancy shall occur'* ": see *Commonwealth v. Maxwell*, 27 Pa. 444, 454. Thus, the earlier constitutional provision *and* the statutory implementation were embodied in Article V, Section 25, of the Constitution of 1873. And, never before, until relatively recently, has that intent been questioned. How could the meaning of the constitutional provision be construed otherwise? By its express terms, the Gov-

---

[2] The terms "judicial office" and "judicial vacancy", as used in this opinion, are intended to refer exclusively to offices or vacancies in the Supreme Court. Since the 1909 amendment of Article VIII, Section 3, of the Constitution, elections for judges of the courts of the several judicial districts are held only on municipal election days, i.e., in odd-numbered years. Hence, what is said herein respecting the filling of vacancies on the Supreme Court by election is not uniformly true of vacancies in judicial office in the courts of the several judicial districts.

[3] It was the 1850 amendment of the 1838 Constitution that, for the first time, made judges in Pennsylvania elective.

ernor's appointment to a judicial vacancy occurring more than three months before the next succeeding general election endures *only* until the first Monday of January following such election. The time limitation upon tenure under an appointment by the Governor is also a marking of the beginning of the new term by election: cf. *Commonwealth ex rel. v. King,* 85 Pa. 103, 111. If the intendment of Article V, Section 25, be not as hereinabove suggested, then the Governor is without power whatsoever to appoint to a judicial vacancy happening *less* than three months before the next succeeding general election. Of course, such a construction would be absurd and should not be entrenched even impliedly. That the Constitution requires that a judicial vacancy occurring more than three months before the next succeeding general election shall be filled at that election rests upon more than constitutional implication. As we have already seen, Article IV, Section 8, as construed in *Buckley v. Holmes,* 259 Pa. 176, 187-188, 102 A. 497, expressly directs that a vacancy in a judicial office shall be filled at the next election appropriate to such office occurring not less than three months after the vacancy.

It is my opinion, therefore, that, under the foregoing constitutional requirements, the three vacancies on this court occurring in 1950 should have been filled at the general election on November 7th last and that the electoral machinery for making the requisite nominations was legally available. However, by the same token, I also think that the appellant's petition for mandamus did not properly lie. The particular portion of the limited-voting provision of Article V, Section 16, of the Constitution, applicable when *two* judges' of the Supreme Court are to be elected for the same term of service, was not operative. There were *three,* not two, vacancies to be filled and, by the express terms of that

constitutional direction, the voters would appropriately have had an opportunity to vote for not more than two; and that, as is well known, was not the case.

The majority's present holding is that the Election Code of 1937 had the effect of rendering ineffectual the specific constitutional provisions governing the filling of vacancies in the office of judge of the Supreme Court except for the *first* of the *three* vacancies (happening in 1950), notwithstanding that all three of such vacancies occurred more than three months before the next succeeding general election. The authority ascribed by the majority for its decision is the ruling of this court in *O'Neill v. White,* 343 Pa. 96, 22 A. 2d 25, which put a patently erroneous construction on Article IV, Section 8, of the Constitution and elevated a mere statute above the fundamental law. That case held that "The Constitutional provision invoked by appellees is unavailing in this case, for this provision is not self-executing and its mandate cannot be carried out because the legislature has not provided the means for doing so" (In *O'Neill v. White* the office of Register of Wills was involved).

It is an utter irrelevancy to the inquiry to dispose summarily of either Article IV, Section 8, or Article V, Section 25, by saying that they are not self-executing. Once those constitutional mandates took effect under existing and concomitantly enacted law, they thereby became operative and could not thereafter be nullified by the legislature whose sworn duty it is to respect and effectuate the Constitution. Nor is any intent to abrogate the cited constitutional provisions by means of the Election Code to be imputed to the legislature: Statutory Construction Act of May 28, 1937, P. L. 1019, Art. IV, Sec. 52, 46 PS §552.

The basic law applicable to the election of public officers, at the time of the adoption of the Constitu-

tion of 1874, was the Act of July 2, 1839, P. L. 519, with its amendments and supplements, and the contemporaneous enactment of January 30, 1874, P. L. 31. Those statutes provided only for the conduct of elections. There was no written law governing *nominations*. "Under [that] system ballots were prepared by individuals or party officers in any form they desired [and] *nominations were made by party machinery, usually conventions, under party rules and at irregular dates"* (Emphasis supplied) : *Commonwealth v. Blankenburg,* 218 Pa. 339, 340, 67 A. 645. There were no fixed dates for making nominations and no statute prescribed any preliminary notices or procedure. It was then a simple matter for a party or political body to supply, in a relatively short time, a nomination for election to a vacancy occurring more than two months before the next succeeding election appropriate to the office. As a consequence, the constitutional mandate of Article IV, Section 8, received full compliance under the election laws and practices as they then existed and needed no further legislative implementation.

The same was equally true of Article V, Section 25, applicable to the filling of a judicial vacancy. In 1888, a judge of the Supreme Court was to be elected to fill the vacancy to be created by the expiration of Chief Justice GORDON's term at the end of the year. Honorable JAMES T. MITCHELL and Honorable J. BREWSTER McCULLOM were the nominees for the office, respectively selected at the party conventions of the Republican and Democratic Parties. After those nominations had been made for the one vacancy, Mr. Justice TRUNKEY died on *June* 24th; and at the ensuing general election that fall, both candidates were elected, the limited-voting provision in Article V, Section 16, of the Constitution being applicable. The fact to be specially noted in this connection is that the vacancy caused by Mr.

Justice TRUNKEY'S death in *June* 1888 was filled at the next succeeding general election occurring more than three months thereafter. Why, then, was a vacancy in the Supreme Court occurring in the month of *June* 1950 (as well as the one occurring in March of that year) not filled at the next succeeding general election more than three months thereafter?

Up to 1891, the Commonwealth had little or no concern with nominations to public office as this court heretofore recognized: see *Watson v. Witkin,* 343 Pa. 1, 8, 22 A. 2d 17. Even the Act of that year (June 19, 1891, P. L. 349) merely provided *for the certification* of convention or caucus nominations to the proper public officers.

The succeeding Act of June 10, 1893, P. L. 419, being "An Act To regulate the nomination and election of public officers . . ." and known as the Baker Ballot Law, was the first legislative enactment in this State to regulate, in any manner, *nominations* for public office. However, that Act fully recognized and allowed for the making of nominations by conventions, by meetings of electors, by caucuses held under the rules of a political party or by any board authorized to certify nominations representing a political party. For nominations under those established methods, *certificates of nomination* were to be issued. The Act also authorized a new procedure, viz., *nominations by papers* signed by a requisite number of qualified electors. Section 5 of the Act required that *"Certificates of Nomination"* for the offices of judge, inter alia, should ". . . be filed with the Secretary of the Commonwealth *at least thirty-five days* before the day of the election for which the candidates are nominated, and *Nomination Papers* for candidates for the said offices shall be filed with the said Secretary *at least twenty-eight days* before the day of such election" (Emphasis supplied). It is ob-

vious that candidates for any vacancy occurring in an elective office more than two months (three months, in the case of a judicial office) before the next succeeding election, appropriate to the office, could be duly nominated under the law and the successor then be chosen by the voters at that election.

Such was the system of nominating candidates for public office that obtained in this State from 1893 down to the time of the adoption of the Uniform Primaries Act of February 17, 1906, P. L. 36. That Act created, for the first time, direct primaries (Winter and Spring) for nomination to certain National and State offices, fixed the times for such primaries and provided for notices to be sent out by the Secretary of the Commonwealth and party officers on or before the ninth Saturday, preceding the primaries, of the particular offices (not nominated by State conventions) to be voted for at the next succeeding general election. Recognizing that the requirement of antecedent notice, in respect of a primary, could not competently defeat the constitutional mandates that vacancies occurring more than two months (three months, in the case of judicial office) before the next succeeding election, appropriate to the office, shall be filled at that election, the legislature wisely inserted in the Act of 1906 (see last paragraph of Section 12) the following clause: "Vacancies happening or existing after the date of the primary may be filled in accordance with the party rules, as is now or hereafter may be provided by law." It is that Section, as construed in *Commonwealth v. Blankenburg,* that is the presently material part of that opinion. The majority cites the *Blankenburg* case for the rule that the statutorily required notices prior to a primary, setting forth the number of candidates to be voted for, cannot be enlarged or amended after the first due publication thereof. To be sure, the

*Blankenburg* case does directly so hold. But, Chief Justice MITCHELL also expressly recognized in that case that the fact that you cannot nominate at a primary for a vacancy in an elective office occurring after the primary electoral machinery had been set in motion does not prevent a nomination for such a vacancy in accordance with the party rules. It was there said (pp. 342-343),—"The foregoing relates to the ordinary and regular mode under section three of the [primary] act of making nominations, *where the vacancies are known in advance in the usual time. Other vacancies 'happening or existing after the date of the primary' are to be filled under section twelve 'in accordance with the party rules as is now or hereafter may be provided by law.'* ... The provisions of that section [three] as to time being mandatory the third vacancy [in the office of judge for Philadelphia County] occurred too late for the nomination to be made under that section and *it necessarily, therefore, falls under the alternative provisions of section twelve*" (Emphasis supplied).

Seven years later, the Primary Act of July 12, 1913, P. L. 719, was enacted. That Act was made applicable to all nominations for public office, National, State and local, and carried forward verbatim as Section 17 (last paragraph) what had been contained in Section 12 of the Act of 1906 as above quoted, respecting nominations for "Vacancies happening or existing after the date of the primary. . . ." The Primary Act of 1913 remained in full force until 1937 when the presently existing law was enacted.

While the Election Code of 1937 did not re-enact, in the precise words of Section 17 of the Act of 1913, the provision relating to nominations for vacancies in elective offices occurring after the primary, it did provide in Section 979 (25 PS §2939) that "Any vacancy happening or existing after the date of the primary

in any party nomination, by reason of the death or withdrawal of any candidate, may be filled by a substituted nomination made by such committee as is authorized by the rules of the party to make nominations in the event of vacancies on the party ticket . . . ." Undoubtedly, the legislature thought that, by Section 979 of the Election Code, it was appropriately re-enacting the provision of existing law necessary to continued compliance with the Constitution's express mandates in the premises. However, what the legislature actually did by Section 979 was to provide for nominations by party action where "any party nomination", rather than an elective office, had become vacant after the primary. As was said in *Watson v. Witkin,* supra, at p. 10,—"Before there can be a 'substituted nomination' there must have been a nomination." Even though the legislature had plainly intended to abrogate the constitutionally necessary provision of the prior law, it could not validly have done so. The legislature can no more abridge or circumvent the Constitution indirectly than it can directly.

*O'Neill v. White,* actually concedes that "If the election laws had not been changed by the Election Code of 1937 nominations could be made to this office [vacant by death on August 22, 1941], to be voted on at this next November 4th Municipal election." In other words, save for the Act of 1937, the relevant requirements of the Constitution would have been respected. But, how can an Act of Assembly validly nullify constitutional mandates which were in full force and effect under existing law from the time of their adoption! Any attempted legislative exertion to that end would be manifestly unconstitutional. The Election Code of 1937 can be accorded complete validity only if its repeal of the Act of 1913 be held not to have affected the constitutionally essential provision of existing law as embodied in Section 17 of the Act of

1913. In short, that necessary provision of the law, not having been actually incorporated in the Election Code of 1937, remains extant, nonetheless, as a constitutionally unrepealable portion of the prior law: cf. *Wright v. Barber*, 5 W. N. C. 444, 445,—a per curiam affirmance by this court of a pertinent memorandum opinion below.

The difficulty presented by this case stems from the ruling in *O'Neill v. White*. But the still larger vice of the present decision lies in the fact that now, for the first time, this court extends the error of *O'Neill v. White* to "The Judiciary" article of the Constitution, thereby enlarging in many instances the tenure of judges serving under gubernatorial appointment and postponing correspondingly the constitutionally mandated elections for the filling of vacancies in judicial office. Such a result is directly contrary to the spirit of our political institutions. In *Commonwealth ex rel. v. King*, supra, Mr. Chief Justice AGNEW remarked the distinction "between the major power of the people to elect . . . by way of regular succession, for fixed terms; and the minor power of the governor to fill a vacancy in an existing term" and then said with respect to the *due* election to vacancies contemplated by Article IV, Section 8,—"The true purpose of this provision is to preserve the popular right, and not to limit or destroy it." One of the very patent practical effects of the decision in *O'Neill v. White* was to increase by as much as a year in some circumstances the terms of gubernatorial appointees to vacancies in elective office. This result veritably upset the uniform and established practice of seventy years with respect to the Governor's appointment to vacancies and the ensuing elections to fill such vacancies.[4]

---

[4] See opinion of Attorney General RENO No. 410, Official Opinions of the Attorney General 1941-1942, p. 119 et seq.

The reasons stated in *Watson v. Witkin,* supra, to which the opinion in *O'Neill v. White* made relying reference, bear no relation whatsoever to the constitutional question in the *O'Neill* case arising under Article IV, Section 8, of the Constitution. *There was no constitutional question of any nature involved in Watson v. Witkin.* The question in the latter case was as to the impact of the Election Code of 1937 upon the Charter Act of Philadelphia (Act of June 25, 1919, P. L. 581) which provided that a vacancy in the office of Mayor in the first three years of the term should be filled by the election of a successor for the unexpired term at the next election occurring more than thirty days after the commencement of such vacancy,—a mere matter of statutory construction.

If the error of *O'Neill v. White* is to be persisted in, then, logically, the judgment below should be reversed and the writ of mandamus sought should be awarded. So long as that decision is accepted as a valid statement of the law, the able argument of appellant's counsel is unanswerable. It is a plain misconception to say that he contends that the constitutional provisions are self-executing for election to two vacancies on the Supreme Court but not for three. Counsel's contention is that the electoral machinery provided by the Election Code of 1937 is the same for two vacancies on the Supreme Court, by virtue of Article V, Section 16, as it is for one vacancy. As to that, there cannot be the least doubt. The Election Code of 1937 is no different in such regard than the Primary Act of 1913. Under the latter statute, a vacancy on the Supreme Court, occurring by the death of Mr. Justice SIMPSON on *July 24, 1935,* was filled at the succeeding municipal election on November 5, 1935, as was also the priorly known vacancy due to the expiration of Chief Justice FRAZER'S term at the end of the year. Actually, the vacancy caused by Mr. Justice SIMPSON's death oc-

curred eight days *after* the last day for the Secretary of the Commonwealth's notice as to the offices for which nominations were to be made at the primary for the ensuing election appropriate to the office. And, no further nominations were needed for the election of two: see *Musmanno v. Lawrence,* 24 D. &. C. 93, where President Judge HARGEST of Dauphin County, in an able opinion, for a unanimous court en banc, assumed without question or discussion that the vacancy due to Mr. Justice SIMPSON's death, which had occurred more than three months before the next election, was necessarily to be filled at that election.

For my own part, I cannot accede to *O'Neill v. White* as binding authority and, at the same time, respect the Constitution's mandates as I understand them to be.