THE STATE OF DELAWARE, upon the relation of REUBEN SATTER-THWAITE, JR., plaintiff in error, *v.* JOHN GILPIN HIGHFIELD, JR., respondent below, defendant in error.

(*February* 27, 1930.)

WOLCOTT, Chancellor, RICE and HARRINGTON, J. J., sitting.

*James I. Boyce* and *Christopher L. Ward, Jr.* (of Marvel, Morford and Ward) for Harry Smith, Jr., plaintiff in error.

*Clarence A. Southerland* for John Gilpin Highfield, Jr., respondent below, defendant in error.

Supreme Court, No. 13, October Term, 1929.

RODNEY, J., delivering the majority opinion in the court below:

The relator contends that the vacancy happening within two months before the general election, that the appointee of the Governor would hold until the second general election and that the successor to Isaac R. Brown, Sr., should have been elected at the general election in November, 1928, and that Harry Smith, having received the greater number of votes at this election, should be declared the Register of Wills.

The question involved in this case.is a very narrow, but exceedingly interesting, one.

*Article 3, § 22, of the Constitution* provides:

"The terms of office of * * * Registers of Wills * * * shall be four years. * * * These officers shall be chosen by the qualified electors of the respective counties at general elections, and be commissioned by the Governor."

*Article 3, § 9*, consists of four paragraphs, the second and third being material. The second paragraph of section 9 provides that the Governor

"shall have power to fill all vacancies that may happen in elective offices * * * by granting Commissions which shall expire when their successors shall be duly qualified."

The third paragraph of section 9 provides:

"In case of vacancy in an elective office * * * a person shall be chosen to said office for the full term at the next general election, unless the vacancy shall happen within two months next before such election, in which case the election for said office shall be held at the second succeeding general election."

At first glance, the terms of the Constitution seem plain and unambiguous. The Governor is given power to fill vacancies in elective offices "by granting Commissions which shall expire when their successors shall be duly qualified." The third paragraph of section 9 of article 3 provides for the election of a successor at the next general election unless the vacancy happens within two months next before the election, in which case the election shall be held at the second succeeding general election. It seems apparent that the postponement until the second general election, of an election for a successor to fill a vacancy when such vacancy occurred within two months before a general election, was for the purpose of fixing a deadline for the consideration of successors to be chosen. It was for the purpose of giving political parties and the people themselves ample time for the consideration of proper persons to fill such vacancies and to provide that due notice to the electors might be given that such office was to be filled. If there be potency or force in this suggestion, then it will be readily seen that the Constitution must be read in the light of two separate and entirely distinct classes of vacancies. Consideration must be given on the one hand to the case of a vacancy occurring within two months prior to a general election and during the first two years of a four-year term

and on the other hand to an entirely different class which would include two-year terms or vacancies occurring within two months prior to the general election at the end of a four-year term, when ordinarily the successor would be elected for the person causing such vacancy.

Before giving consideration to these different classes of cases to be treated, it seems proper to advert to some general principles which form the foundation of the present inquiry. It is a fundamental principle, to be constantly kept in mind, that the right to choose their offices such as Registers of Wills lies in the people themselves. A corollary to this principle and associated with it is the secondary principle that when a vacancy has occurred in the person of the people's choice, then the office filled by such person shall again be submitted to the people at the earliest available time. The right of the people to elect their officers is a major right and is one of the chief reasons for a Constitution and the right to fill this particular office by election is secured by article 3, section 22.

The right of a Governor to fill a vacancy, on the other hand, is a minor power and is intended only as a temporary and auxiliary expedient to be effective only until the people can speak their will again.

Let us then apply these principles to the classes of vacancies mentioned above. When a vacancy happens within two months prior to a general election during the first two years of a four-year term, it is apparent that an unusual situation arises which must be specifically provided for. The vacancy may occur but a day or two before the election. The people have not anticipated a vacancy. They have given no consideration to suitable candidates, the political parties have made no nominations and there is no time to get the names upon the ballots. In this situation the Constitution says that the Governor shall fill the vacancy until the second succeeding general election. The Constitution in this way allows the Governor to exercise his auxiliary power to fill the vacancy until the office shall be restored to election by the people at the earliest proper time and the auxiliary power to fill vacancies thus supplements the principal power of election.

Let us now consider the other class, viz., where a vacancy occurs in a two-year office within two months before the general election, or occurs within two months before a general election at the end of a four-year term—for the two cases are similar. This is the situation in this case. Isaac R. Brown died October 29, 1926, four days before the general election. In these two classes of cases now considered, as in the one under direct discussion, the people anticipated the vacancy. They knew a successor was to be chosen and the political parties had held their nominations and the names of the candidates appeared upon the ballot. The people had, presumably, weighed the merits of the candidates and were ready to express their choice. It was their right, under the Constitution, to elect a successor to Brown for the office of Register of Wills at the general election of 1926 and they were prepared to exercise such right. To construe the Constitution in such a way as to allow the Governor to exercise an auxiliary power to fill vacancies until the second succeeding general elections applicable to such cases would so exalt the auxiliary power of the Governor and subordinate the principal power of election by the people that the latter power might be destroyed entirely.

It would seem that when a vacancy happens within two months of a general election and an auxiliary power is given to the Governor to fill such vacancy until the second succeeding general election that this limitation of time is inserted not for the purpose of depriving the people of a right to elect, but as a means of cutting down, as far as possible, the term of the appointee and restore the office to the franchise of the people at the earliest available time.

A construction of the third paragraph of section 9 of article 3 of the Constitution to the effect that every vacancy happening within two months of a general election would be filled by the Governor until the second succeeding general election is fraught with serious possibilities. It is not impossible that the future might see an elective officer resign within two months before the general election at which a successor was to have been chosen. If the Governor should appoint for two more years and if in turn this appointee should

resign within two months before the next general election and the Governor have again the power to appoint for two years more, then the Constitution would be nullified and the so-called right of the people to elect their officers would be but a mockery.

Let us suppose another case. Suppose Brown had died on November 29, instead of October 29. It is obvious that there would be a vacancy in an "elective office." Not happening within two months before the general election, the last clause of the third paragraph of section 9 would not apply, but the first clause of the third paragraph would remain in full force—"in case of vacancy in an elective office * * * a person shall be chosen to said office for the full term at the next general election." In the suggested case, the people at the general election just past have selected a person to fill the office and he but waits until January first to take office. Can it be possible that in such a case the Governor could appoint a successor until the next general election and that the election already held by the people be completely nullified? Such a construction will not be adopted unless there is no alternative. The construction adopted by this court harmonizes the various provisions and avoids the chaotic results of any other conclusion.

Upon the death of Brown on October 29, 1926, a vacancy existed under the second paragraph of section 9. A vacancy in what? The Constitution had already provided for the election of his successor and the machinery of the law was in full operation for such election on November 2, 1926. The vacancy could only have existed in the unexpired term of Brown—expiring in January, 1927.

If, then, the vacancy in the second paragraph means a vacancy in the unexpired term of the deceased incumbent, how does the vacancy in the third paragraph differ from it? Under the third paragraph vacancies are to be filled at the next general election. Plainly this can only mean that those vacancies are to be filled which are not provided for. When, as in this case, other sections of the Constitution provided for the election of Brown's successor, then the auxiliary provisions of the third paragraph of section 9 cannot apply. The third paragraph of section 9 of article 3 has

no application to vacancies in two-year terms or where such vacancy occurs within two months prior to the general election at the end of the four-year term, when by law a successor would be elected for the person causing such vacancy.

The death of Isaac R. Brown, on October 29, 1926, could not deprive the people of their right to elect his successor four days later, after the Constitution and Laws had provided for such election to fill said office and after the nominees had been chosen and ballots prepared and distributed. If, then, the election of 1926 was a valid one and the term of office a four-year term from January, 1927, then there was no valid election for Register of Wills in 1928.

The only circumstance that would make us hesitate in the adoption of the views outlined above is a consideration of the facts surrounding the similar case of a vacancy caused by the death in 1910 of Theodore F. Clark, Auditor of Accounts. The cited instance was identical with the present one and the two cases cannot be distinguished. In that case no legal proceedings were instituted for the formal action of a court, but the then Governor, pursuant to the provisions of *section* 402 *of the Revised Code,* on September 28, 1910, asked the opinion of the judges. The then judges, on September 30, adopted and returned to the Governor a construction of the constitutional provision under discussion, which was opposed to that we now believe to be correct. This opinion, not being the opinion of a court in a case pending before it, is not binding on us, but we hold such a high regard for the learning and legal ability of the judges then sitting that their opinion would be very persuasive and almost controlling in an ordinary case. When, however, the construction of the fundamental law of the state and directly affecting one of the most cherished rights of freemen, we conceive it matter is a very important one, involving the people at large in a to be our duty to express the law as we find it to be and to decline to yield our firm opinion except to a formal judicial decision. This is especially true since error, if such there be in our conclusion, can be remedied and corrected in the Supreme Court of this state within a few weeks.

The direct authorities bearing upon the question are quite few. The two cases which bear great similarity to the case at bar were decided by the highest courts of Pennsylvania and New York. In both instances these courts reached the same conclusion as reached by a majority of this court. *Com. ex rel. King v. King*, 85 *Pa.* 103; *People ex rel. Jackson v. Potter*, 47 *N. Y.* 375.

Attention might be directed to a subsequent instance in which the advisory opinion of the judges was not followed. November 7, 1922, was the day of a general election. On that day at five o'clock A. M., before the general election started, George M. Fisher, State Treasurer, died. The office was a two-year one and his successor was to be elected on the same day. Fisher was not a candidate for re-election and nominations had been made and ballots distributed. In that case the election was held and the Governor appointed a person to fill the vacancy until the successor, elected on November 7, took office, which was in the succeeding January, 1923. We only mention this case to show that the practical construction of the clause under discussion is the same as that adopted by a majority of this court.

The demurrer to the plea of the defendant is hereby overruled and upon motion of the attorney for the relator, final judgment will be entered.

PENNEWILL, C. J., dissenting in the court below: I cannot concur in the majority decision reached in this case.

I feel bound by the opinion given to the Governor by all the Supreme Court Judges in 1910 on a question admittedly identical with the one involved in the present case.

That opinion was accepted as the law of the State at the time, and has been generally recognized as such until the present case arose. Indeed, I have never known it to be questioned before.

It is apparently thought now by some persons that the opinion referred to was given hastily and without proper consideration. My recollection of what occurred at the time is clear enough to warrant my saying that the question submitted by the Governor received the careful and conscientious consideration that one coming from

such a source deserved. Argument by counsel was not deemed necessary.

The constitutional provision upon which an opinion was requested was so plain and unambiguous on its face that there did not seem to be any good reason for delaying the answer.

The point considered was the meaning of the Constitutional provision in question and not its possible effect. If it was mistaken or unwise it was conceived to be the province of the people and not of the judges to correct it. Other words were not read into the provision—the third paragraph of section 9 of article 3 of the Constitution—so as to make it harmonize with the general intent of the fundamental law respecting the election of public officers and the filling of vacancies.

The second and third paragraphs of section 9, provide as follows:

"He [the Governor] shall have power to fill all vacancies that may happen in elective offices, except in the offices of Lieutenant-Governor and members of the General Assembly, by granting Commissions which shall expire when their successors shall be duly qualified.

"In case of vacancy in an elective office, except as aforesaid, a person shall be chosen to said office for the full term at the next general election, unless the vacancy shall happen within two months next before such election, in which case the election for said office shall be held at the second succeeding general election."

The question in dispute in the present case is: Whether the concluding and qualifying part of the third paragraph means what it says, and is applicable to a vacancy in any elective office which the Governor is authorized to fill and which happens within two months before the next general election; or whether it applies only to a vacancy that happens in the first two years of a four-year term. The respondent would so limit its application notwithstanding its unmistakable language, and insists that any different construction would be inconsistent with the fundamental theory of the Constitution and the obvious intent of said section.

The question, narrowed down, is this: Whether the general intent of the second paragraph of section 9 is qualified by the express exception contained in the third paragraph in the way its

language clearly imports. Did the Constitution makers intend what the qualifying words obviously mean, or did they intend what the respondent contends for in this case?

The respondent's argument is based very largely on the unfortunate results that might follow from a strict and literal interpretation of said concluding words. It seems to me that such an argument should not have weight when the language of the constitutional provision is clear and its meaning plain.

Because of the words in the last clause of said third paragraph of section 9, the Supreme Court Judges in 1910 did not confine its application to the first half of a four-year term, but expressed the opinion that if the vacancy occurred, even in a two-year term, within two months before the next general election, a person should be elected to the office, not at the next general election, but at the second succeeding general election.

There were able lawyers in the Constitutional Convention, and presumably they had something to do with framing the provision the meaning of which is now in dispute. Their intention, as clearly expressed, was to provide for a rare, difficult and perhaps embarrassing situation, that would arise if an elective office should become vacant a very short time before the next election. In such case it was provided that the election of a successor should be postponed until the second succeeding general election, trusting the Governor to fill the vacancy in the interim. There is nothing in the provision which shows that the Constitution makers intended to restrict its application to the first half of a four-year term. It might be better if it could be so construed but that seems impossible without reading into the provision other and restrictive words.

It is true that the Supreme Court of Pennsylvania has, in one or two cases, so construed a constitutional provision very similar to our own, but it is not certain it would have done so if the court had been confronted with a unanimous decision directly contrary to their conclusion by the same highest court or all the judges thereof.

The unanimous opinion of the chancellor and law judges of our Supreme Court, expressed to the Governor in 1910, has been

acquiesced in by the people of the state for almost twenty years, and I cannot agree at this time, in this case, and in this court, that it shall be disregarded.

HARRINGTON, J., delivering the opinion of the Supreme Court, the case having been argued in that court before WOLCOTT, Chancellor, and RICE and HARRINGTON, J. J.:

The question to be determined is whether Mr. Highfield was legally elected to the office of Register of Wills for New Castle County for a four-year term, beginning in January, of 1927, at the general election held in November, of 1926, or whether by reason of there being no constitutional provision for an election at that time Mr. Smith was legally elected to that office in November, of 1928, and is now entitled to the possession of such office.

The determination of this question depends upon the proper construction of the Constitution of 1897. Its provisions were carefully considered in the majority opinion filed by the court below and it is doubtful whether anything of any substantial value can be added to that opinion.

The constitutional provisions particularly in point are section 22, article 3; section 1, art. 5; section 9, art. 3, and section 8 of the schedule.

Section 22 of article 3 provides:

"The terms of office of Prothonotaries, Clerks of the Peace, Registers of Wills, Recorders, Registers in Chancery and Clerks of the Orphans' Court shall be four years; and the terms of office of Sheriffs and Coroners shall be two years. These officers shall be chosen by the qualified electors of the respective counties at general elections, and be commissioned by the Governor."

Section 1 of article 5, provides:

"The general election shall be held biennially on the Tuesday next after the first Monday in the month of November, and shall be by ballot. * * *"

Section 9 of article 3 consists of four paragraphs, of which the second and third only are material.

Paragraph 2 provides:

"In case of vacancy in an elective office, except as aforesaid, a person shall be chosen to said office for the full term at the next general election, unless the vacancy shall happen within two months next before such election, in which bers of the General Assembly, by granting Commissions which shall expire when their successors shall be duly qualified."

Paragraph 3 provides:

"He [the Governor] shall have power to fill all vacancies that may happen in elective offices, except in the offices of Lieutenant-Governor and mem-case the election for said office shall be held at the second succeeding general election."

Section 8 of the schedule annexed to the constitution, provides:

"The terms of office of all State and County officers made elective by this amended Constitution shall commence on the first Tuesday in January next after their election, unless otherwise provided in this amended Constitution or Schedule."

Section 21, art. 3, also provides:

"The terms of office of the Attorney-General and Insurance Commissioner shall be four years; and the terms of office of the State Treasurer and Auditor of Accounts shall be two years. These officers shall be chosen by the qualified electors of the state at general elections, and be commissioned by the Governor."

Under the constitution of 1831, for which the present constitution was substituted, county and state officers were appointed by the Governor. Section 8, art. 3.

Some few exceptions to this rule were specifically provided for (section 3, art. 7), but by its general scheme it provided for the selection of state and county officers by appointment and not by the direct vote of the people.

From the sections above quoted, it appears, however, that this procedure was radically changed by the present constitution, and that its general scheme provides for the direct election of both state and county officers instead of their appointment by the Governor. While the terms of such officers vary somewhat in their length, it clearly contemplates their election at general elections in orderly succession for the terms provided for; such terms to begin on the first Tuesday in January following their election.

The present constitution, therefore, contemplates the election, at general elections, of Registers of Wills in orderly succession for four-year terms; such terms to begin in the month of January following their election. Section 22, art. 3; section 8 of the schedule.

While regular biennial general elections were provided for, the framers of the Constitution naturally realized that interruptions in its general scheme, with respect to offices, would necessarily occur from time to time, by reason of death, removal, resignation and the like, and at times when the vacancies caused thereby could not be immediately filled in the regular manner.

For the convenience of the public and to prevent any interruptions in the transaction of public business, with the exception of two offices, one of which is to be filled by special elections, paragraph 2, section 9, article 3, therefore, provides that such vacancies shall be filled by the Governor by appointment.

Bearing in mind that the Constitution not only provides for biennial elections but for offices having two, as well as four-year terms, vacancies in such offices may, therefore, occur within two months next before a general election in the first two years of a four-year term, within two months next before a general election in a two-year term, or within two months next before a general election in the last two years of a four-year term.

The argument made on behalf of Mr. Smith is based entirely on the last clause of paragraph 2, section 9, art. 3.

His counsel contend that the provision in question is plain and unambiguous, and that there is nothing, whatever, to limit its application to any particular class of vacancies.

They further contend that as the death of Isaac R. Brown, Sr., took place within two months next before the general election of November, 1926, this case comes within the strict letter of that provision, and that no election for such office could, therefore, be legally held until the general election of November, 1928, at which time it is conceded that Mr. Smith received a majority of all the votes cast for the office in dispute.

If this contention be correct, it necessarily follows that the vacancy caused by the death of Mr. Brown was not confined to the

expiration of his regular four-year term but extended to the January following the general election of 1928 and that the whole of such vacancy should have been filled by the Governor by appointment.

The argument made on behalf of Mr. Highfield is that section 9, article 3, was merely intended as an auxiliary or supplemental provision to sections 21 and 22 of article 3 and must be given a construction consistent therewith and not at the expense of the rights of the electorate over those of the Governor.

In its final analysis, the question for us to determine, therefore, is whether the clause relied on by Mr. Smith was intended to apply to a vacancy occurring in an office in the last two years of a four-year term, and within two months before the ensuing general election.

If it does not apply to such a vacancy, the general constitutional scheme for the election of state and county officers in orderly succession by the people could be defeated indefinitely by resignations of such officers within two months next before a general election at which their successors in the natural course of events would be elected.

Supplementing his contention that the language of section 9, article 3, is plain and unambiguous and not in conflict with any other provisions of the Constitution, the relator contends that it is not within our province to consider the result of giving such a provision its ordinary and natural meaning. *Greencastle Twp. v. Black*, 5 *Ind.* 566; *Spencer v. State*, 5 *Ind.* 41; *Cooley's Const. Limitations* (6th *Ed.*), *page* 87, *note*.

■■ This rule can, however, have no application where the language in dispute, when read in connection with the entire instrument, is capable of more than one construction. It is a fundamental rule of constitutional construction that if the general purpose of the instrument as a whole can be ascertained, the language of particular provisions must, if possible, be construed with reference to that purpose, and so as to subserve it. *Knox v. Lee*, 12 *Wall.* 457, 531, 20 *L. Ed.* 287; *Prigg v. Pennsylvania*, 16 *Pet.* 539, 10 *L. Ed.* 1060; 12 *C. J.* 703. Thus particular language may

receive a color from the entire context in which it is found, which but for such context, would be absent from it.

If it is possible to do so, the vacancy clause (section 9, art. 3) must, therefore, be construed in harmony with the general scheme of the Constitution.

Both paragraph 2 of section 9, art. 3, and the first or main clause of the sentence in paragraph 3 of that section are perfectly consistent with the general constitutional scheme, providing for the election rather than the appointment of both state and county officers.

Paragraph 2 provides, in substance, that in case of a vacancy in an elective office, the Governor shall fill such vacancy by appointment, but that the term of his appointee shall expire when his successor "shall be duly qualified."

One of the chief qualifications of his successor necessarily is his election to such office by the people. The first or main clause of the sentence in paragraph 3, therefore, provides:

"In case of vacancy in an elective office, * * * a person shall be chosen to said office for the full term at the next general election;"

and this has been construed to mean the next general election in point of time. *State v. Hart,* 3 *W. W. Harr.* (33 *Del.*) 15, 129 *A.* 691.

Instead of being intended to limit sections 21 and 22 of article 3, both of the above provisions of section 9, art. 3, would, therefore, merely seem to apply to vacancies in unexpired terms and for the filling of which no other provision has been made by the Constitution.

What is there to indicate that the word "vacancy," as used in the last or subordinate clause of paragraph 3 of that section is inconsistent with the same constitutional scheme, and, therefore, should be given any other construction?

The words "at the next general election," above quoted from this paragraph, are followed in the same sentence by the words "unless the vacancy shall happen within two months next before such election, in which case the election for said office shall be held at the second succeeding general election."

█ In the absence of anything indicating a contrary intent, it is a general rule of construction that where the same word or phrase is used on more than one occasion in the same instrument, and in one instance its meaning is definite and clear and in another instance it is susceptible of two meanings, there is a presumption that the same meaning was intended throughout such instrument. *Lewis, South. Statutory Construction, vol.* 1, § 399; *James v. Dubois,* 16 *N. J. Law* 293; *State v. Skeggs,* 154 *Ala.* 249, 46 *So.* 268; *N. Y. Central R. R. Co. v. Lazarus (C. C. A.),* 278 *F.* 900; 12 *C. J.* 706.

While the application of this rule necessarily depends upon the language of the instrument, taken as a whole, and, therefore, upon the facts of each case, when applicable, it would seem to be particularly pertinent to the use of words in the same section and even in the same paragraph and sentence. *Silvia v. Scotten,* 2 *W. W. Harr.* (32 *Del.*) 295, 122 *A.* 513, minority opinion.

█ There is nothing, whatever, to indicate that the vacancies referred to in the last clause of paragraph 3, § 9, art. 3, were not of the same character as those referred to in the preceding parts of the same section and sentence, and the same construction already placed thereon would, therefore, seem to apply to that clause.

Further than that, the provision in that clause, postponing an election in case of the happening of a vacancy within two months next before a general election and substituting appointment by the Governor therefor, is perfectly consistent with the general scheme of the Constitution.

At the time that it went into effect there were certain statutory provisions for the designation of candidates for public offices to be voted for at general elections.

The provision in question must, therefore, have been because time for the proper selection of candidates to be voted for was deemed essential in cases of unexpected vacancies. There could have been no reason for the insertion of such a provision with respect to the election of a successor where the vacancy occurred in the last two years of a four-year term. The same reasoning would, also, apply to a vacancy occurring in an office having a two-year

term. In both of such approaching vacancies the ends of the regular constitutional terms would naturally be anticipated by the political parties and by the people themselves, and, as in this case, provision would be made for the selection of candidates to be voted for to fill them. This, however, would not be true as to other and unanticipated vacancies that could not be covered by sections 21 and 22 of article 3.

While there seems to be very little authority directly in point, the conclusion above indicated has, also, been reached by the courts of last resort of both Pennsylvania and New York. *Commonwealth ex rel. King v. King*, 85 *Pa.* 103; *People ex rel. Jackson v. Potter*, 47 *N. Y* 375.[1]

The relator very largely bases his contention on an advisory opinion involving a similar question given by the then Chancellor and Law Judges, to the Governor, in 1910.

While that opinion was contrary both to our conclusion and to that of the majority of the court below in this case, the facts would seem to indicate that the judges who gave it did not have the benefit of the argument of counsel or the citation of authorities on the question before them, and that the rights of the parties were, therefore, not fully presented to them.

Further than that, as was pointed out by the court below, opinions of that character, in this state, are usually not reported and are not considered to have the binding effect of a judgment regularly entered in a court proceeding. At any rate, feeling as we do, it is our duty to affirm the judgment of the court below; and judgment must, therefore, be entered accordingly.

[1] The limiting effect of the hold-over clause of the constitution (section 5, art. 15) on the happening of vacancies in elective offices in certain cases was considered by the Superior Court in *State v. Caulk*, 3 *W. W. Harr.* (33 *Del.*) 344, 138 *A.* 354, but as that case was not cited in the argument of this case, it was not deemed necessary to consider it in this opinion.