Peoples Bridge Company of Harrisburg *v.* Shroyer, Secretary of Highways et al., Appellants.

Argued November 26, 1946. Before MAXEY, C. J., DREW, LINN, STERN, PATTERSON, STEARNE and JONES, JJ.

reargument refused January 28, 1947.

Harry F. Stambaugh, with him Phil H. Lewis, Deputy Attorney General, William M. Rutter, Deputy Attorney General, and James H. Duff, Attorney General, for appellants.

Charles E. Kenworthey, with him Wm. A. Schnader and Schnader, Kenworthey, Segal & Lewis, for appellee.

OPINION BY MR. JUSTICE LINN, January 13, 1947:

This was a taxpayers' class bill against the Secretary of Highways, the Auditor General and the State Treasurer, officers of the Commonwealth, to enjoin them, in the words of the bill, "from using any of the moneys in the Motor License Fund of the Commonwealth . . . for the purpose of acquiring any toll bridges, under the purported authority of Act No. 406, approved May 29, 1945, or in any event . . . from using any of the moneys in the Motor License Fund . . . for the purchase of the toll bridge at Sunbury . . . until they have first ascertained that all toll bridges within the Commonwealth can be acquired for a sum not to exceed $7,000,000 . . ." The Commonwealth answered by denying the legal effect of the averments of the bill. Pursuant to stipulations, the court heard argument on legal issues and sustained the bill and enjoined defendants "from using any of the moneys in the Motor License Fund . . . for the purpose of acquiring any toll bridges under the purported authority of Act No. 406 approved May 29, 1945." The defendants appeal.

The principles of law applicable in the consideration of the appeal are well established and the decision is free from difficulty. Two subjects of legislation were considered: (1) the acquisition of certain toll bridges;

(2) the use of the Motor License Fund; the legislature dealt with the first and the voters at a general election with the second. The legislature provided a method of acquiring and paying for certain toll bridges by two acts of assembly approved May 29, 1945. The electors amended the Constitution, effective November 6, 1945, with respect to "proceeds from gasoline and other motor fuel excise taxes" etc. At the time of the 1945 election such proceeds were carried in a fund known as Motor License Fund pursuant to the Act of July 7, 1913, P. L. 672, and the Act of May 11, 1927, P. L. 886, section 1101, and amounted to a large sum.

1. The law concerning the acquisition of toll bridges prior to the effective date of the constitutional amendment, November 6, 1945, may be briefly stated. (a) The Act of April 27, 1927, P. L. 395, 36 P.S. 3131, authorized acquisition of such bridges by purchase or condemnation and payment therefor out of the Motor License Fund subject to the requirement that the collection of tolls be continued until the Commonwealth should have received back the cost with interest at 4% per annum. No bridge was acquired or obligation created pursuant to that statute which was expressly repealed in 1945 by Act No. 406, P. L. 1139, 36 P.S. 3141.1. (b) On November 7, 1933, the people provided another method of paying for toll bridges by adopting section 16, Article IX, of the Constitution. This amendment authorized the legislature to provide for the issue of bonds "to the amount of $10,000,000 for the purpose of acquiring toll bridges." [1]

---

[1] "Sec. 16. In addition to the purposes stated in article nine, section four, of this Constitution, the General Assembly may provide, by law, for the issue of bonds, to the amount of ten millions of dollars, for the purpose of acquiring toll bridges, and may, by law, provide that, upon the acquisition of any such bridge, tolls may be charged for the use thereof, sufficient to pay the interest and sinking fund charges on such bonds and the cost of the maintenance of such bridges, until the bonds issued have been retired and such bridges are freed of tolls."

To execute the amendment, the Act of January 2, 1934 (1933-34, P. L. 201) was passed. We are advised that no bonds were issued pursuant to that legislation and that no money has been placed in the Toll Bridge Fund provided for in that statute. (c) In 1945, but prior to November 6, the effective date of the constitutional amendment, three Acts of Assembly were passed on the same day. Two of them, numbers 406, P. L. 1139, 36 P.S. 3141.1, and 407, P. L. 1144, 72 P.S. 3564, were approved on May 29; the third Act, No. 428, P. L. 1242, 36 P.S. 670 et seq., was approved June 1, 1945. The learned court was of opinion that Acts No. 406 and 407 authorized defendants to acquire all the toll bridges wholly within the Commonwealth (there are ten such bridges) at a total cost not exceeding $7,000,000 and therefore enjoined the defendant Secretary from purchasing the toll bridge at Sunbury without first ascertaining whether all the toll bridges could be acquired without exceeding the expenditure of $7,000,000.

2. On this appeal the appellants renew the contention made by them in the court below and again contend that while the acts limited expenditure to $7,000,000 they did not require the purchase of all the bridges for that sum or less. The learned court also held that the bill must be sustained on the ground that the constitutional amendment of November 6, 1945, was a declaration by the electors which superseded the Acts No. 406 and 407. Appellants challenge that conclusion.

We all agree that the learned court's construction of Act No. 406 was correct when considered with Act No. 407, approved the same day and *in pari materia;* we think the words used show that the legislature determined to spend not more than $7,000,000 for the ten bridges. Section 1 of Act No. 406 defined "toll bridge" as used in the Act, as one "located wholly within the Commonwealth"; section 14 contained the following: "Provided, however, That the amount to be expended

for the acquisition of all toll bridges, as provided herein, shall not exceed a total sum in excess of seven million dollars ($7,000,000)." The appropriation Act No. 407 [2] contained the proviso "that the total amount to be expended for the acquisition of all toll bridges in Pennsylvania shall not exceed the sum of $7,000,000."

The third Act of 1945, mentioned in the record, Act No. 428, P. L. 1242, 36 P.S. 670, approved June 1, is a codification of state highway law, as appears by its title: "An Act Relating to roads, streets, highways and bridges; amending, revising, consolidating and changing the laws administered by the Secretary of Highways and by the Department of Highways relating thereto." Sections 731 to 739 of this Act provide for the acquisition, jointly with counties, of toll bridges on a fifty-fifty basis; sections 801 to 814 provide for acquisition by the Commonwealth alone and for payment by bonds subject to re-imbursement from tolls. This Act became effective September 1, 1945, about three months after the effective date of Acts No. 406 and 407, and, as no purchase had been made pursuant to those acts, at least rendered them ineffective after September 1, 1945. The precise effect on the earlier Acts need not be discussed because the constitutional amendment, effective November 6, 1945, superseded Acts No. 406 and 407. Act 428 provides a method by which toll bridges may be acquired at any time.

3. We must reject appellants' contention that Acts No. 406 and 407 appropriated $7,000,000 from the Motor

---

[2] This Act, P. L. 1144, 72 P.S. 3564, is an amendment of the Act of May 1, 1929, P. L. 1046, 72 P.S. 3561, and provides that a new clause be added as follows: "Section 5. The remainder of the money, from time to time in the Motor License Fund, is hereby appropriated to the Department of Highways for the following purposes: (u) Subject to the approval of the Governor, for payment of the cost of acquiring toll bridges located wholly within the Commonwealth of Pennsylvania: Provided, however, That the total amount to be expended for the acquisition of all toll bridges in Pennsylvania shall not exceed the sum of seven million dollars ($7,000,000)."

License Fund to pay for such toll bridges as the Secretary might acquire and that the appropriation was not affected by the constitutional amendment. The Motor License Fund was created by Section 1101 of the Vehicle Code approved May 11, 1927, P. L. 886, though a similar fund without that title had been created in 1913, P. L. 672. This Motor License Fund, in 1945, amounted to a large sum, the proceeds of motor license fees, taxes, etc. We take this amount from appellants' brief: "At the close of business on November 5, 1945, the day before election, the balance on hand in the Motor License Fund amounted to $28,032,045.05 in cash and $30,350,000 in war bonds. Of this balance, seven million dollars was appropriated and set aside to pay for toll bridges under Act No. 406 . . ." In the course of the arguments, this appropriation is referred to as a "continuing" appropriation; such an appropriation was considered in *Com. ex rel. Bell v. Powell*, 249 Pa. 144, 154, 94 A. 746, et seq., dealing with automobile registration and license fees received pursuant to the Act of July 7, 1913, P. L. 672. Although this appropriation was transferred by Act No. 407 from an earlier appropriation, it had not been drawn upon; none of the money appropriated had been spent and no obligation to spend it had been created; there was no debt; the appropriation remained subject to further action by the legislature [3] or by the electors by amending the Constitution. That was the status of the Motor License Fund on November 6th when the electors adopted the amendment. The words of the amendment expressly specified

---

[3] Such action is illustrated by Act No. 407. The money in the Motor License Fund as it existed in the State Treasury "and all moneys which may hereafter be paid into the Motor License Fund" had been appropriated by the Act of May 1, 1929, P. L. 1046, as amended by the Act of June 29, 1937, P. L. 2412, 72 P.S. 3561. But the "continuing" appropriation was changed by Act No. 407 as appears in the Act quoted above in note 2.

and included "all" the "proceeds" which constituted the Motor License Fund, a fund which contained no proceeds from any other source than the sources described in the amendment. The amendment reads: "All proceeds from gasoline and other motor fuel excise taxes, motor vehicle registration fees and license taxes, operators' license fees and other excise taxes imposed on products used in motor transportation after providing therefrom for (a) cost of administration and collection, (b) payment of obligations incurred in the construction and reconstruction of public highways and bridges shall be appropriated by the General Assembly to agencies of the State or political subdivisions thereof; and used solely for construction, reconstruction, maintenance and repair of and safety on public highways and bridges and air navigation facilities and costs and expenses incident thereto, and for the payment of obligations incurred for such purposes, and shall not be diverted by transfer or otherwise to any other purpose, except that loans may be made by the State from the proceeds of such taxes and fees for a single period not exceeding eight months, but no such loan shall be made within the period of one year from any preceding loan, and every loan made in any fiscal year shall be repayable within one month after the beginning of the next fiscal year."

The voters of the Commonwealth were of course competent to modify or nullify an existing legislative appropriation against which no obligation of the Commonwealth had issued. It is elementary that the words of the amendment must be understood in their common or ordinary meaning.[4] We must regard the electors as having understood [5] and intended that "all proceeds" of the

---

[4] *Busser v. Snyder*, 282 Pa. 440, 449, 128 A. 80; *Hoffman v. Kline*, 300 Pa. 485, 494, 150 A. 889; *Com. ex rel. Logan v. Hiltner*, 307 Pa. 343, 348, 161 A. 323.

[5] On this subject we quote the following note from the opinion of the learned court below written by Judge WOODSIDE: "The Election Code of June 3, 1937, P. L. 1333, Section 605, provides that 'proposed

character described, which, many years ago, as we have seen, were created into the Motor License Fund, "shall be appropriated . . . and used solely for construction, reconstruction, maintenance and repair of and safety on public highways and bridges and air navigation facilities and costs and expenses incident thereto, . . . and shall not be diverted by transfer or otherwise to any other purpose, except . . ." with a limitation not now relevant. It is of course true that if between the date of the approval of Acts No. 406 and 407, and the date of the adoption of the amendment, the Commonwealth had bought the ten toll bridges for $7,000,000 or less, but had not yet paid for them, the amendment would not prevent payment of the obligations which were valid when created. But the amendment cancelled no obligation; it merely set aside an unused appropriation. Compare *Com. ex rel. v. Brennan,* 258 Pa. 1, 5, 101 A. 947; *U. S. v. Chambers,* 291 U.S. 217. Appellants' contention that the amendment did not apply to the proceeds in the Motor License Fund as it existed on November 5, 1945, requires the insertion of additional words in the amendment. The appellants would read the amendment as though it said, "All proceeds hereafter received in the Motor License Fund." The court may not add the words, "hereafter received," because those or similar words would restrict the more compre-

---

constitutional amendments shall be printed on the ballots or ballot labels in brief form to be determined by the Secretary of the Commonwealth with the approval of the Attorney General.' 25 P.S. 2755.

"Reference to the proposed amendment appeared on the ballot in the following form:

" 'Shall the State Constitution be amended by adding Section eighteen to Article nine, requiring that revenues from taxes and license fees on gasoline, motor fuels, motor vehicles and operators and other products used in motor transportation, shall be used solely for highways, safety thereon, air navigation facilities, costs and expenses incident thereto; and permitting loans from such revenues to the Commonwealth only if repaid in the next fiscal year?' "

hensive meaning which the electors could properly have assumed to have been intended by the words of the amendment. The electors are presumed to have known of the existence of the Motor License Fund (it had existed since the Act of July 7, 1913, P. L. 672) and to have understood that they were providing for its use as then constituted as well as it should be when increased by future receipts of the kind described.

The appellants also contend that by using the word "construction" in authorizing the appropriation and use of the Fund "solely for construction, reconstruction, maintenance and repair of and safety on public highways and bridges and air navigation facilities . . ." the electors intended to authorize the purchase of toll bridges; the word "construction," it is said, will include "purchase." We must reject the suggestion that in providing for payment of bridge construction, the electors would understand that they were authorizing bridge purchase; the common understanding of the word "construction" is strongly against it (compare *In re Howett-Landis's Appeal*, 10 Pa. 379; *Hoffman v. Kline*, 300 Pa. 485, 150 A. 889) and it is the common understanding of the word to which we must give effect.

Decree affirmed at appellant's costs.

CONCURRING OPINION BY MR. JUSTICE JONES:

The decree under review rightly enjoined the Secretary of Highways, in the circumstances, from proceeding to purchase just one of the ten remaining privately owned toll bridges located wholly within the State. I, therefore, concur in the affirmance. The scheme of legislation upon which the Secretary relied for his asserted authority in the premises (Acts Nos. 406 and 407 approved May 29, 1945) is plainly to the effect that all of such existing bridges should be acquired for an aggregate sum not exceeding the $7,000,000 appropriated by Act No. 406 and that, if the appropriation should prove

insufficient for the purpose specified, none of the bridges was to be acquired under the particular legislation.

I am unable, however, to assent to the proposition enunciated by the court below and now embodied in the opinion for this court that the amendment to the Constitution contained in Sec. 18, Art. IX, effective November 6, 1945, prohibits the use of monies in the Motor License Fund for the acquisition (for highway purposes) of a bridge or bridges already constructed. As I do not think pertinent legal authority requires such a narrow interpretation of the amendment, the action of this court in such connection seems the more regrettable because it effectually ties the hands of the legislature with respect to the permissible disbursement of revenues whose use for highway and highway bridge purposes has never heretofore been inhibited and the amendment was not intended to restrict. The seemingly (to me) cogent reasons in support of that view need not now be gone into. There can be little doubt that the legislature will soon be aware, if it is not already aware, of the serious restraints which the amendment has placed upon it, especially as now construed. Fortunately, with the legislature in session, the initiation of correction, if desired, need not be long delayed.