Theodore O. Rogers, Lucy Cunko, Richard Burridge, and Jacob D. Yaros, v. C. Delores Tucker, Secretary of the Commonwealth, and C. Robert Budd, Charles P. Hoy, and William B. Blake, Members of the Board of Elections of the County of Dauphin. In Mandamus.
Theodore O. Rogers, Lucy Cunko, Richard S. Burridge, and Jacob D. Yaros, v. C. Delores Tucker, Secretary of the Commonwealth, and C. Robert Budd, Charles P. Hoy, and William B. Blake, Members of the Board of Elections of the County of Dauphin. In Equity.

338

Argued March 8, 1971, before President Judge Bow-
MAN and Judges CRUMLISH, JR., KRAMER and WILKIN-
SON, JR.

*Richard P. Brown, Jr.,* with him *Samuel C. Harry* and *Morgan, Lewis and Bockius,* for plaintiffs.

*Israel Packel,* Counsel to the Governor, with him *J. Shane Creamer,* Attorney General, for defendants.

PER CURIAM OPINION, March 11, 1971:

Because of the important issue involved and the urgency for prompt disposition this Court sat specially to hear argument in the above consolidated cases on March 8, 1971. After hearing argument and deliberating, a per curiam order and judgment was entered the same day, the essence of which declared that the Secretary of the Commonwealth had unlawfully certified that the office of Judge of the Commonwealth Court now held by Judge THEODORE O. ROGERS was subject to the elective process in the forthcoming municipal election.

An appeal has been taken to the Supreme Court of Pennsylvania from our order and judgment. Pursuant to Rule 63 of the Supreme Court there follows a statement, in the form of an opinion, of the reasons for the order and judgment entered.

These consolidated cases, one in equity and one in mandamus, with identical party litigants, raise a unique and narrow constitutional question with an undisputed factual background.

Pursuant to Section 3 of The Commonwealth Court Act of January 6, 1970, P. L.　　(Act No. 185-1969), 17 P.S. 211.3, Judge ALEXANDER BARBIERI was appointed by the Governor as one of the first judges of the Commonwealth Court for a term to expire the first Monday of January, 1972. On January 4, 1971, Judge BARBIERI submitted his resignation as a judge of the Commonwealth Court to take effect as of the time he was duly sworn as Justice of the Pennsylvania Su-

preme Court. Judge BARBIERI was appointed and sworn as a Justice of the Supreme Court on January 4, 1971. January 4, 1971 is less than ten months prior to the next municipal election, which will take place November 2, 1971.

Plaintiff, Judge THEODORE O. ROGERS, was appointed by the Governor January 4, 1971 to fill the vacancy on the Commonwealth Court created by the resignation of Judge BARBIERI. His commission specifies that his term is to end on the first Monday of January, 1974, which date is the first Monday of January following the next municipal election more than ten months after the vacancy occurred.

On February 24, 1971, defendant Secretary of the Commonwealth issued to all county Boards of Election in the Commonwealth a written notice, certifying that on November 2, 1971 there will be an election for the office of one Judge of the Commonwealth Court. That notice relates to the seat on the Commonwealth Court now held by Judge ROGERS. Pursuant to the notice of the Secretary of the Commonwealth, on March 2, 1971 defendant Dauphin County Board of Elections published a notice declaring that there will be an election on November 2, 1971 for the office of Judge of the Commonwealth Court. Plaintiffs brought these actions asking this Court to direct that those notices be withdrawn and that no election be held in 1971 for that seat.

The Judiciary Article (Article V) of the Constitution of Pennsylvania of 1968, effective January 1, 1969, in a few brief sentences (Section 4) created the Commonwealth Court as a constitutional court and, in the Schedule to the Article, mandated that the General Assembly should "stagger the initial terms" of the first judges. These provisions of the Constitution, the legislation adopted in response to this mandate, and the provisions of Section 13 of the Judiciary Article of the

Constitution bear upon and require consideration in resolution of the issue before us.

Section 3 of The Commonwealth Court Act, *supra*, provides in material part:

"(a) The Governor in the manner hereinafter provided, shall appoint the first judges of the court: Provided That not more than four of the appointees shall be members of the same political party. Such appointments shall be for the purpose of implementing Section 4 of Article V of the Constitution of the Commonwealth of Pennsylvania and section 3 of the Schedule thereto, *and shall not be construed to constitute the filling of vacancies in the office of judge, as provided in subsection (b) of section 13 of Article V of said Constitution.*

. . . .

(d) *Vacancies caused by the death, retirement, resignation or removal of a judge appointed by the Governor under subsection (a) of this section shall be filled in the manner and for the term prescribed by section 13 of Article V of the Constitution of Pennsylvania.*" (Emphasis added)

Section 13(a) and 13 (b) of the Constitution provide:

"(a) Justices, Judges and justices of the peace shall be elected at the municipal election next preceding the commencement of their respective terms of office by the electors of the Commonwealth or the respective districts in which they are to serve.

(b) *A vacancy in the office of justice, judge or justice of the peace shall be filled by appointment by the Governor.* If the vacancy occurs during the session of the Senate, the appointment shall be with the advice and consent of two-thirds of the members elected to the Senate, except in the case of justices of the peace which shall be by a majority. If the vacancy occurs during sine die adjournment of the Senate such appointment

shall not require the advice and consent of the Senate. *The person so appointed shall serve for an initial term ending on the first Monday of January following the next municipal election more than ten months after the vacancy occurs."* (Emphasis added)

Considering Section 3(d) of The Commonwealth Court Act and its reference to Section 13 of Article V of the Constitution, the General Assembly has stated in clear and unambiguous language as to vacancies in office of the *first* judges appointed to the Commonwealth Court—and only as to such judges—that the Governor shall fill such vacancies in the manner and *for the term* prescribed in Section 13 of the Constitution. Inasmuch as Section 13(b) of Article V of the Constitution is the only provision found in Section 13 dealing with this subject, when considered together, these provisions are capable of only one meaning, namely, that the appointment shall be for a term which ends on the first Monday of January following the next municipal election more than ten months after the vacancy occurs.

These provisions of The Commonwealth Court Act are not mentioned nor referred to in the Commonwealth's brief nor in the Attorney General's opinion to the Secretary of the Commonwealth which gave rise to this litigation. When questioned at oral argument before the Court as to their significance, the Attorney General appears to contend that Section 3(d) of The Commonwealth Court Act must be construed as referring to Section 13 of the Constitution in its entirety.

We reject this contention. We have already pointed out that only Section 13(b) of Article V of the Constitution addresses itself to the subject of vacancies in judicial office and prescribes the terms of appointive office. Section 13(a) does not touch upon this subject. It simply provides that judges who are subject to the

elective process shall be elected at the municipal election next preceding the commencement of their term of office.

No principle of constitutional law is more firmly settled than that where the words of the Constitution are plain they must be given their common or popular meaning. As stated in *Breslow v. Baldwin Township School District,* 408 Pa. 121, 125-126, 182 A. 2d 501, 504 (1962) : ". . . Where in the Constitution 'the words are plain . . . [they] must be given their common or popular meaning, for in that sense, the voters are assumed to have understood them when they adopted the constitution: Busser v. Snyder, 282 Pa. 440, 449, 128 A. 80.' Lighton v. Abington Township, 336 Pa. 345, 354-355, 9 A. 2d 609. See to the same effect Peoples Bridge Co. v. Shroyer, Secretary of Highways, 355 Pa. 599, 607, 50 A. 2d 499; Collins v. Kephart, 271 Pa. 428, 441, 117 A. 440; Long v. Cheltenham Township, 269 Pa. 472, 475, 112 A. 545; Com. ex rel. Lafean v. Snyder, 261 Pa. 57, 63, 104 A. 494."

As a corollary of that rule our Supreme Court has also stated that "[w]e have no right to disregard or (unintentionally) erode or distort any provision of the Constitution, especially where, as here, its plain and simple language make its meaning unmistakably clear." *Commonwealth v. Russo,* 388 Pa. 462, 471, 131 A. 2d 83, 88 (1957).

As applied to the issue in question the controlling constitutional provision is Section 13(b) of Article V. Its plain meaning and its recognition by the General Assembly in enacting Section 3 of The Commonwealth Court Act as the controlling provision leaves no room for doubt.

Section 3 of The Commonwealth Court Act is most pertinent. It expresses the concern and action of the General Assembly in response to the constitutional

mandate to implement Article V creating a new court with its attendant concerns. Surely no reasonable person could assume, and to its credit the General Assembly did not assume, that the first judges of the Commonwealth Court, whose terms of office were to be staggered, would all fully serve the respective terms of office to which they were appointed. It therefore addressed itself to the very problem now before us and resolved it as discussed above. Therefore, Section 3 of The Commonwealth Court Act when considered in conjunction with Section 13(b) of Article V of the Constitution is decisive.

The Commonwealth asserts that an appointment to fill a judicial vacancy cannot extend beyond the existing term of the judicial office in which such vacancy occurred. It is axiomatic, it contends, that Sections 13(a) and (b) of the Constitution must be read together and must produce such a conclusion. It cites as authority, *Commonwealth ex rel. King v. King*, 85 Pa. 103 (1877); *O'Neill v. White*, 343 Pa. 96 (1941); and a Delaware decision, *State v. Heighfield*, 152 A. 45 (Del. 1930).

We need not and expressly do not pass upon the issue as posed by the Commonwealth, nor do we consider the cited authorities as controlling or persuasive. The unique and narrow issue before us is not concerned with judicial office and judicial appointments in general nor with judicial office on the Commonwealth Court except as to the *first* judges of the Court and their replacements in the event of vacancy. This unique and narrow issue must be and is resolved not by hypothetically posed questions as to judicial office and vacancies in general, but in consideration of what the electors approved in adopting the Constitution of 1968 and the action of the General Assembly in implement-

ing the mandate that the Commonwealth Court should be created.

For these reasons we entered the order and judgment of March 8, 1971.